**Congressman John M. MURPHY, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION et al., Defendants.**

Civ. A. No. 80–518.

United States District Court, District of Columbia.

May 28, 1980.

**MEMORANDUM**

FLANNERY, District Judge.

In this Freedom of Information Act ("FOIA") case, the plaintiff, a United States congressman, seeks the release of materials in the custody of the Federal Bureau of Investigation. The agency records at issue stem from the defendants' so-called "ABSCAM" investigation. Representative Murphy specifically requests the disclosure of all ABSCAM aural and video recordings in which he appears. The defendants' *Vaughn* index reveals that the government withholds four videotapes recording the activities of the plaintiff.

The plaintiff represents in Congress New York State's 17th Congressional District. The district includes parts of lower Manhattan and all of Staten Island. On February 2, 1980, WNBC-TV of New York City, reported that FBI agents, posing as businessmen and Arab sheiks, passed bribe money to several members of Congress. In return for the money, the Congressmen allegedly promised to exert influence on behalf of the agent-imposters. Some of the meetings between the Congressmen and the undercover agents were videotaped and recorded. The undercover investigation was termed Arab-Scam, or ABSCAM.

The newspapers reported the story on the next day. In a front page article, the *New York Times* identified the plaintiff as one of six legislators—five congressmen and one senator—targeted by the two year undercover operation. The *Staten Island Advance*, which serves the plaintiff's district, also highlighted the story on February 3 and in subsequent days.

Presently before the court are cross-motions for summary judgment and a motion challenging the sufficiency of the *Vaughn v. Rosen* itemization. The plaintiff claims that release of the tapes is necessary to ensure a fair re-election campaign. Vitaliano Affidavit, paragraph 12. The government avers that exemptions (b)(3) and (b)(7)(A) of the FOIA, 5 U.S.C. § 552(b)(3) & (b)(7)(A), sanction nondisclosure of the tapes. For the reasons set forth below, the court agrees with the government and will enter summary judgment on behalf of the defendants.

**I. *EXEMPTION THREE***

Exemption three of the FOIA allows a government agency to withhold records that are:

Specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). In essence, exemption three permits nondisclosure when another statute expressly commands that documents be withheld from the public.

The collateral statute claimed by the government herein is Federal Rule of Criminal Procedure 6(e).[1] This law protects the secrecy of grand jury proceedings. It provides, subject to limited exceptions, that "matters occurring before the grand jury" shall not be disclosed.

The defendants argue that on February 5, 1980, a grand jury convened in the Eastern District of New York. The plaintiff is among the objects of the grand jury investigation. In connection with its duties, the grand jury examined the videotapes requested by the plaintiff. Since Rule 6(e) requires that secrecy prevail pursuant to materials presented to the grand jury, the tapes are allegedly exempt from disclosure.

The plaintiff maintains that Rule 6(e) only prohibits the disclosure of materials that constitute "matters occurring before the grand jury." The videotapes allegedly fall outside the parameters of this term because they do not reveal the inner workings, scope, or direction of the grand jury proceedings. Accordingly, Rule 6(e) arguably fails to bar the release of the tapes.

■ It is beyond question that under certain circumstances Rule 6(e) allows the release of grand jury materials. These circumstances were explicated in *Hiss v. Dept. of Justice*, 441 F.Supp. 69 (S.D.N.Y.1977). The plaintiff therein attempted to employ the FOIA to seek the release of grand jury testimony recorded in 1947–48. The court ruled that FOIA cannot affect the traditional rule of grand jury secrecy. But the court noted that Rule 6(e) delineates three exceptions: 1) a government attorney in the performance of his duties; 2) a demonstration that grounds exist to dismiss an indictment because of irregularities in the grand jury proceedings; and 3) a matter preliminary to a judicial proceeding. *Id.* at 70.

Beyond the express exceptions explicated within the text of Rule 6(e), courts also recognize that documents desired for their intrinsic value may possibly not reveal "matters occurring before the grand jury." The plaintiff in *Walter, Conston, Schurtman & Gimpel, P. C. v. Dept. of Justice*, 79 Civ. 2918 (S.D.N.Y. Oct. 3, 1979), advanced this argument. He maintained that documents sought for their inherent value, rather than for obtaining an insight to the grand jury proceedings, may be released. The court denied disclosure. It found that despite the plaintiff's avowed interest in merely learning the contents of the documents, production nonetheless "would severely compromise the secrecy of the Grand Jury and would serve to indicate what matters were of interest to it.[2]" Opinion at 6.

The Seventh Circuit articulated the same standard, but allowed the release of documents, in *United States v. Stanford*, 589 F.2d 285 (7th Cir. 1978). The defendants in *Stanford* sought to overturn mail fraud convictions. They urged reversal, alleging that the government violated Rule 6(e) by releasing employment files that were in the custody of the grand jury. The Seventh Circuit noted that "[u]nless information reveals something about the grand jury proceedings, secrecy is unnecessary." The disclosures were upheld because they "revealed nothing about the grand jury investigation." *Id.* at 291.

*Stanford* holds out the possibility that under proper circumstances documents may not establish matters occurring before the grand jury. But it necessarily recognizes that when documents reveal the nature of the grand jury proceedings, secrecy is appropriate.

1. The plaintiff agrees that Federal Rule of Criminal Procedure 6(e) constitutes a "statute" encompassed within the (b)(3) exemption. Plaintiff's memorandum in support of motion for summary judgment at 6.

2. The court further found that "[p]roduction . . . would both suggest the scope, focus, and direction of the Grand Jury investigation and provide identification of documents which have been considered by the Grand Jury." Opinion at 6.

■ The foregoing cases—cited by both the plaintiff and the defendants—establish a uniform rule for adjudicating whether materials presented to a grand jury warrant protection under Federal Rule of Criminal Procedure 6(e). The standard is clear: outside of the express statutory exceptions, Rule 6(e) prohibits disclosure unless release fails to elucidate the inner workings of the grand jury.

■ Herein, release of the tapes would certainly reveal the scope and direction of the grand jury investigation. The March 25 Bresson affidavit, at paragraph seven, states as much. Although the affidavit employs rather cursory language, the *in camera* submission [3] amplifies the reasoning employed in reaching this conclusion. The *in camera* affidavit substantiates [4] that release of the tapes would reveal: 1) the breadth of evidence presented to the grand jury; 2) the specific conversations recorded; 3) the persons and places mentioned; 4) the precise statements made; 5) the quality of the tapes and the audio recording; 6) the length of the recordings; and 7) precisely what information, pursuant to specific meetings and transactions, is in the hands of the government prosecutors.

■ The plaintiff's argument is therefore legally sound but factually incorrect. Materials that fail to reveal matters before the grand jury may be released. But this court's review of the public and *in camera* submissions leads unmistakably to the conclusion that release would reveal the nature, scope, and direction of the grand jury investigation.

The disclosures of information—both authorized and unauthorized—do not alter the court's ruling. As for the authorized releases, the attorney in charge of the grand jury investigation engaged in limited disclosures to defendants, prospective defendants, or their counsel. Puccio affidavit, paragraph six. These disclosures entailed attempts to secure cooperation. They therefore fall within the rubric of prosecutorial discretion.[5] Moreover, it is clear that government authorized disclosure fails to constitute a waiver of FOIA exemptions. *Krohn v. Dept. of Justice*, No. 79–0667 (D.D.C. Sept. 7, 1979) at 4–5.[6]

The unauthorized leaks undoubtedly have created an aura of speculation concerning the grand jury investigation. But it is mere speculation. The Justice Department has never confirmed the accuracy of these leaks. While the public may now speculate as to the transactions and nature of the grand jury investigation, release of the tapes would definitively establish the scope and nature of the proceedings. Hence, release would only exacerbate whatever harm has ensued as a result of the unauthorized leaks.

■ This court cannot condone leaks of an unauthorized nature. But the court like-

---

**3.** This court's order of April 3, 1980 directed the defendants to submit an *in camera* affidavit. The court requested the defendants to explain, *inter alia*, how release of the tapes would: 1) reveal the scope of the grand jury proceeding; and 2) harm future enforcement actions. The defendants were also requested to present "all tapes that refer to or record the plaintiff's conversations or actions" for *in camera* review.

Upon examination of the *in camera* affidavit, the court decided that review of the tapes was unnecessary. The public and private affidavits alone enabled the court "to make a responsible de novo determination of the claims of the exemption." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978).

**4.** The plaintiff's memorandum of April 8, 1980 questions the propriety of an *in camera* affidavit. The plaintiff maintains that an *in camera* submission is sanctioned only if the agency claims the FOIA national security exemption. 5 U.S.C. § 552(b)(1).

This Circuit has made clear that *in camera* affidavits may be employed to assist the resolution of particularly sensitive FOIA requests. *Ray v. Turner*, 587 F.2d 1187, 1211 & n.43 (D.C.Cir.1978). The court finds that the instant suit satisfies the sensitivity criterion articulated in *Ray*.

**5.** They also constitute a release that fails to reveal the scope or nature of the grand jury investigation. As noted in the Puccio *in camera* affidavit, the prosecutor released certain items pursuant to promises of confidentiality.

**6.** In *Krohn*, the court held that prior release of material to a criminal defendant cannot constitute a waiver of the government's right to assert a FOIA exemption.

**1142**

wise cannot approve the purposive exacerbation of the harm created by the leaks, with the attendant definitive revelation of the scope and nature of the grand jury proceedings. *Fensterwald v. CIA*, CA 75–897 (D.D.C. July 12, 1978) at 5. The court therefore holds that an unauthorized leak fails to waive the government's claim to a (b)(3) exemption when release would undermine the purpose of the exempting statute.[7] *See Safeway Stores, Inc. v. FTC*, 428 F.Supp. 346, 347 (D.D.C.1977).

## II. *EXEMPTION SEVEN*

■ 5 U.S.C. § 552(b)(7)(A) permits a government agency to deny disclosure of agency records for:

> Investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement purposes.

It is well recognized that if documents stem from an ongoing criminal investigation, and if disclosure would harm a subsequent enforcement proceeding, then agency records are exempt from the FOIA under 5 U.S.C. § 552(b)(7)(A). *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). The instant records constitute part of an ongoing criminal investigation. Bresson affidavit, paragraph seven. Accordingly, the question for resolution is whether release of the tapes would harm subsequent enforcement efforts.

The plaintiff maintains that the tapes already have been revealed to the public through the government's leaks. "The fact that the government has already disclosed the videotapes prevents a finding that a redisclosure will interfere with enforcement proceedings." Plaintiff's summary judgment brief at 19. The government avers that disclosure would interfere with the ongoing investigation and harm future enforcement actions.

[7] As a general proposition, the early, pre-indictment release of investigatory records interferes with enforcement proceedings "by prematurely revealing the government's case." *Barney v. Internal Revenue Service*, No. 79–1488 (8th Cir. April 3, 1979). It also risks exposing the direction of the government's investigation before all sources and witnesses have been fully questioned and all leads fully pursued. In sum, "the release of materials otherwise unavailable to a litigant would increase a defendant's resources and thereby weaken and interfere with the government's efforts in an enforcement action." *Kanter v. Internal Revenue Service*, 433 F.Supp. 812, 818 (N.D. Ill.1977).

■ As for the instant case, the affidavits submitted by the government establish that disclosure would injure future enforcement proceedings. The Bresson affidavit states that the plaintiff's FOIA request encompasses material subject to the criminal discovery process. Paragraph seven. These materials are not yet available to the plaintiff under the Federal Rules of Criminal Procedure. Exemption (b)(7)(A) is designed precisely to prevent disclosure in this situation. Senator Hart, who introduced the exemption in the 1974 amendments, emphatically declared "that Congress intended that this seventh exemption was to prevent harm to the Government's case in court by not allowing an opposing litigant earlier or greater access to investigative files than he would otherwise have." Freedom of Information Act and Amendments of 1974, (Pub.L. 93–502), Source Book, Joint Committee Print, 94th Cong., 1st Sess. 332 (1975).

The *in camera* submission further notes that the plaintiff is unaware of the precise nature of the extant evidence compiled by the government. Although he knows the activities that he engaged in, he cannot be

---

7. The purpose of Federal Rule of Criminal Procedure 6(e) is to guard the secrecy of the grand jury process so as to, *inter alia*, avoid revealing the scope and direction of the grand jury investigation. Despite the disclosures, the court concludes that release of the tapes would re-

veal significant and damaging information not already known by the public or the objects of the grand jury investigation. Release would therefore unmask the grand jury proceeding by revealing its scope and direction.

aware of the breadth of activities recorded by the government's videotape devices. Release of the tapes would definitively reveal exactly what evidence the government has compiled. It could also alert other potential defendants as to the nature of the evidence held against them.

 It is improper for the government to release such evidence before indictment. Should indictment occur, Congressman Murphy enjoys an unqualified right to examine the tapes. Fed.R.Crim.P. 16. The FOIA, however, cannot alter "the explicit discovery procedures set forth in Rule 16, Fed.R.Crim.P." *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).[8]

The leaks that have occurred fail to alter this conclusion. The limited nature of the authorized leaks, along with their purpose of obtaining cooperation in the investigation, establish that they fall within the domain of prosecutorial discretion.

The unauthorized leaks may have injured the government's interest in effectively pursuing enforcement actions. But the rationale for nondisclosure is still compelling: the breadth and exact nature of the government's evidence is unknown to prospective defendants—and unsubstantiated—despite

the leaks.[9] The court therefore finds that release of the tapes would prematurely reveal the government's case, thereby injuring the government's efforts to pursue enforcement actions. 5 U.S.C. § 552(b)(7)(A) thus permits the government to withhold the tapes requested by Congressman Murphy.

### III. *VAUGHN v. ROSEN ITEMIZATION*

The plaintiff also attacks the defendants' *Vaughn* index. The court granted the plaintiff's motion for a *Vaughn v. Rosen* itemization [10] on May 7, 1980. The May 7 order commanded the government to "itemize all tapes responsive to the plaintiff's FOIA request, specifying the number of tapes, the dates taken, and the applicable FOIA exemptions."

The government filed its *Vaughn* index on May 13, 1980. Third affidavit of Thomas Henry Bresson. The Bresson affidavit specifies that the government possesses four videotapes responsive to the plaintiff's FOIA request. All four tapes also have corresponding oral recordings. The FBI recorded the first tape on October 30, 1979

---

8. As stated in the Puccio *in camera* submission: "Access to the tapes at this time would upset the delicate balance between the government's interest in a criminal prosecution and the prospect of defendant's rights which have been carefully structured by Congress in the Federal Rules of Criminal Procedure."

9. The Justice Department has never confirmed the press reports. Defendants' response to plaintiff's motion for summary judgment at 6 n.7.

10. The plaintiff sought, in the alternative, a motion to lift the court's March 25, 1980 protective order. That order prevented the plaintiff from deposing the Director of the FBI or an appropriate representative. The March 25 ruling recognized that discovery is appropriate in a FOIA case to resolve a factual dispute. But the court ruled that a factual issue could not emerge until the government filed its memorandum of law and accompanying affidavits. Accordingly, the plaintiff's motion was premature.

Subsequent to the government's submission of its summary judgment papers, the plaintiff filed a motion for a lifting of the protective order, or, alternatively, for *Vaughn v. Rosen*

itemization. The plaintiff alleged the existence of a factual issue; namely, whether the defendants possessed additional records responsive to his FOIA request.

The court's May 7, 1980 Order noted that Congressman Murphy limited his FOIA request to oral and visual materials in which he appears. See plaintiff's February 5, 1980 administrative request letter; complaint at ¶ 8; April 1, 1980 memorandum in support of summary judgment at 1 ("Plaintiff . . . filed this action to obtain an injunction requiring production of aural and visual recordings of himself in the possession of the defendants.")

The government's *in camera* submission established that the defendants identified all tapes responsive to the plaintiff's FOIA request. These tapes were limited to two transactions in October, 1979, and January, 1980. Without an extant factual issue, a lifting of the protective order was inappropriate. But the court, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), ordered the defendants to produce a public index. That index is the subject of the plaintiff's motion challenging its sufficiency.

and the latter tapes on January 10, 1980. Third Bresson affidavit, ¶ 3. As stated in the government memoranda, previous affidavits, and the third Bresson affidavit, the defendants claim exemptions (b)(3) and (b)(7)(A) are applicable to the entirety of the tapes.

The plaintiff's challenge of the *Vaughn* index takes the form of a motion for an order to show cause why judgment should not be entered for the plaintiff forthwith. The plaintiff alleges that the itemization detailed in the third Bresson affidavit fails to set forth "the correlation of statements in the justification . . . to actual portions of the requested records."

■ The government's *Vaughn* index meets the standards of this Circuit. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), requires an itemization of the agency records and an identification of the exemptions claimed. It is particularly helpful in complex FOIA cases involving numerous materials. The government sometimes claims several FOIA exemptions for each document. But each exemption may apply only to one portion of a withheld agency record. In such a situation, a *Vaughn v. Rosen* itemization discloses to the plaintiff which exemption applies to each segment of withheld material. According to the D.C. Circuit:

> In a large document it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt . . . [A]n indexing system would subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification.

*Id.* at 827.

In the instant case, however, the government claims two exemptions that apply to the entirety of the plaintiff's FOIA request. There is no question concerning which exemption applies to each withheld portion of the agency records. Moreover, the government has identified all records responsive to the plaintiff's FOIA request. The index also specifies the exemptions claimed by the

defendants. Accordingly, under the circumstances of this case, the government index satisfies the dictates of *Vaughn*.

There is a second, and equally compelling reason, supporting the sufficiency of the defendants' *Vaughn v. Rosen* itemization. A more detailed itemization of the four withheld videotapes would compromise the efficacy of the very exemptions claimed.

The court in *Vaughn* recognized that "an analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information . . ." *Id.* at 826. Judge Wilkey, who authored *Vaughn*, recently reaffirmed that a document by document index is unnecessary when an index would reveal "the secret nature of the information." *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978). Any notion that this rationale applied only to the (b)(1) national security exemption was dispelled in *Mead Data Central, Inc. v. United States Dept. of Air Force*, 566 F.2d 242 (D.C.Cir. 1977), a case in which the government claimed exemption five. The court in *Mead* noted that "agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information." *Id.* at 261.

Herein, a more detailed justification would compromise the secrecy of the information protected by exemptions (b)(3) and (b)(7)(A). For example, the release of additional information would reveal the scope and nature of the grand jury investigation. This would undermine exemption three, which, through the application of Criminal Rule 6(e), guards the secrecy of grand jury proceedings. Similarly, the release of more specific information would jeopardize future enforcement actions. As explained, *supra*, the plaintiff is entitled to such information only after indictment. Early release would therefore undercut the purpose of exemption (b)(7)(A).

■ The court recognizes the importance of a *Vaughn v. Rosen* itemization. A FOIA plaintiff deserves to know which ex-

emptions apply to each segment of withheld material. But when the government claims two exemptions apply to the entirety of four withheld agency records; when the court's *in camera* examination confirms the correctness of the government exemption claims; and, when more specific itemization would undermine the efficacy of the claimed exemptions, a more generalized index, such as that provided herein, suffices.