**FUND FOR CONSTITUTIONAL GOVERNMENT, Appellant,**

v.

**NATIONAL ARCHIVES AND RECORDS SERVICE, et al.**

Nos. 79–2047, 79–2084.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1980.

Decided June 23, 1981.

As Amended July 31, 1981.

Andra N. Oakes, Washington, D. C., with whom William A. Dobrovir and Erwin Chemerinsky, Washington, D. C., were on the brief, for appellant.

Daniel J. Metcalfe, Atty., Dept. of Justice, with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and GASCH,* United States District Court Judge for the District of Columbia.

Opinion for the Court filed by District Judge GASCH.

GASCH, District Judge:

This Freedom of Information Act (FOIA)[1] case presents questions of the scope and applicability of FOIA Exemption 7(C)[2] and Fed.R.Crim.P. 6(e), pertaining to grand jury secrecy, in conjunction with FOIA Exemption 3.[3] It also presents a question regarding the meaning of the requirement that a party "substantially prevail" as a prerequisite for an award of attorney fees under 5 U.S.C. § 552(a)(4)(E). Because we have concluded that the district court properly applied the claimed exemptions to the information here in question, we affirm the judgment insofar as it found that this information is properly withheld.[4] Because, however, we have also concluded that the district court underestimated the causative impact of this litigation on the voluntary release of a substantial number of documents, we remand the case to the district court for further consideration of the question of attorney fees.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 5 U.S.C. § 552 (1976).

2. 5 U.S.C. § 552(b)(7)(C).

3. 5 U.S.C. § 552(b)(3).

4. Our resolution of the Exemptions 3 and 7(C) issues eliminates the need for a lengthy discussion of appellant's challenges to the propriety of the Exemption 5 claims presented in this case. As noted by the district court, Exemption 5 was not claimed for any deletion which was not also the subject of another exemption. 485 F.Supp. at 13. Although the district court's holding that certain information was not properly exempt under Exemption 7(C) left certain deletions solely dependent upon Exemption 5, appellant's challenges are not directed at those deletions.

## I. BACKGROUND

At issue in this litigation are approximately five hundred thousand pages of documents[5] generated in the course of six investigations conducted by the Watergate Special Prosecution Force (WSPF). By letter dated November 18, 1975, appellant Fund for Constitutional Government (FCG) requested that WSPF produce for inspection and copying "all non-exempt records of [WSPF] of the investigations which it carried out from May 25, 1973 to October 15, 1975, and which are no longer in process."[6] The then special prosecutor, Charles F. C. Ruff, advised FCG that he would have to deny the request because of its generality but that, within limits imposed by a reduced staff, the office would assist in formulating a more specific request.[7] FCG's reformulated request specifically sought release of information pertaining to: (1) investigations of "the 18½ minute tape gap"; (2) the I.T.T. investigation; (3) investigations of corporate campaign contributions; (4) the "Townhouse" investigation; (5) the "Milk-Fund" investigation; and (6) the Hughes-Rebozo investigation.[8]

Because even this limited request encompassed a massive number of documents, FCG agreed to allow WSPF more than the ten day time period prescribed by 5 U.S.C. § 552(a)(6)(A) to respond fully to its request. After reviewing the entire "Townhouse" file, WSPF released a few documents but withheld the vast majority in reliance on one or more FOIA exemptions. FCG requested immediate review of representative documents from the I.T.T. and Hughes-Rebozo files. After these requests

were treated in a similar fashion, FCG commenced this action in the district court on September 30, 1976.

Shortly after filing the complaint, FCG made a motion to require WSPF to produce an index of the withheld documents in accordance with the dictates of *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). WSPF opposed the *Vaughn* motion and moved for a stay of proceedings in accordance with 5 U.S.C. § 552(a)(6)(C).[9] In reliance on this Court's decision in *Open America v. Watergate Special Prosecution Force*, 178 U.S. App.D.C. 308, 547 F.2d 605 (1976),[10] the district court granted WSPF's motion.

In April 1977, FCG suggested that, rather than continue a document by document review, WSPF review the closing memoranda of each of the six investigations. Shortly after the parties had struck this agreement, WSPF was finally terminated and custody of the documents was transferred to the National Archives and Records Service (NARS). NARS completed the review of the closing memoranda, including those of the Townhouse file, the I.T.T. file and the Hughes-Rebozo file which had previously been reviewed by WSPF. As a result of this review, a substantial amount of information not previously made available was released.

As to the information still being withheld, NARS filed affidavits, detailed *Vaughn* indices and copies of the redacted documents with the district court. NARS

---

5. This figure represents an estimate by the National Archives and Records Service.

6. Joint Appendix (J.A.) at 14.

7. J.A. at 18. Because the office was in the process of winding down, it had only twelve permanent employees.

8. J.A. at 20.

9. That section provides in pertinent part:
 If the government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and

allow the agency additional time to complete its review of the records.
5 U.S.C. § 552(a)(6)(C).

10. In *Open America*, this Court held that:
 "[E]xceptional circumstances" exist where an agency ... is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A) and when the agency can show that it "is exercising due diligence" in processing the requests.
 178 U.S.App.D.C. at 319, 547 F.2d at 616.

moved for summary judgment on March 3, 1978. In a thorough memorandum, the district court, treating the motion as one for partial summary judgment,[11] ordered the release of certain documents to FCG[12] but upheld the claimed exemptions as to the majority of the information. *Fund for Constitutional Government v. National Archives and Records Service*, 485 F.Supp. 1 (D.D.C.1978). Subsequently, the district court ordered the entry of final judgment while retaining jurisdiction to monitor compliance with its prior orders. J.A. at 135–36.

## II. DISCUSSION

A. *Exemptions Pursuant to 5 U.S.C. § 552(b)(7)(C)*

NARS contends, and the district court concluded, that a substantial amount of information contained in these files is properly exempt from disclosure under FOIA Exemption 7(C). That section exempts from the FOIA mandatory disclosure requirements:

**11.** The district court determined that, while this decision finally adjudicated the issues as to the closing memoranda, the action still encompassed the underlying documents and the judgment was not therefore a final disposition of the case. *Fund for Constitutional Government v. National Archives and Records Service*, 485 F.Supp. 1, 4 (D.D.C.1978).

**12.** NARS has not appealed from the district court's order that certain information be released.

**13.** FCG contended in the district court that the closing memoranda for the I.T.T. and Hughes-Rebozo files were not investigative records because they were prepared after the investigations had concluded. The district court rejected this contention. 458 F.Supp. at 5. It has apparently been abandoned since it has neither been briefed nor argued on appeal.

**14.** The district court further refined the categories of information properly exempt under 5 U.S.C. § 552(b)(7)(C) as follows:

A. ... segments contain[ing] allegations, suppositions, assessments, or speculations of wrongdoing on the part of individuals not prosecuted[.]

....

B. ... segments contain[ing] evaluations of the demeanor or trustworthiness of certain individuals, the credibility of certain witnesses, and the accuracy of certain testimony[.]

[M]atters that are—

. . . .

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy . . . .

5 U.S.C. § 552(b)(7)(C). FCG apparently concedes for the purpose of this appeal that the information in question is contained in "investigatory records compiled for law enforcement purposes."[13]

The district court upheld the invocation of Exemption 7(C) for the following three general categories of information: (1) information which would reflect investigations of allegations of possible wrongdoing by individuals who were neither indicted nor prosecuted; (2) information which revealed facts pertaining to individuals who were not the targets of investigation; and (3) information which would reveal the identity of a confidential source.[14]

. . . .

C. ... segments contain[ing] the identification and evaluation of evidence compiled against persons not prosecuted[.]

. . . .

D. ... segments contain[ing] information identifying confidential sources[.]

. . . .

E. ... deletions ... made ... on the grounds that they revealed the medical or emotional condition of individuals[.]

. . . .

F. ... segments contain[ing] information relating to the decision to prosecute or not to prosecute, and therefore reflect[ing] on the culpability of the individuals mentioned[.]

. . . .

G. ... segments contain[ing] discussions of individuals who were not subjects of the investigation nor otherwise publicly associated with it[.]

. . . .

H. ... segments contain[ing] summaries of statements and interviews regarding the activities of persons under investigation but not prosecuted[.]

. . . .

I. ... segments contain[ing] accounts of negotiations with and other actions by defense attorneys which reflect on the culpability of their clients[.]

485 F.Supp. at 8–9. The district court also found that all of the information which would

■ While the dominant objective of the FOIA is disclosure, *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *Vaughn v. Rosen*, 157 U.S.App.D.C. at 343, 484 F.2d at 823, Congress made a considered judgment that under certain circumstances the public's right of access to governmental information should yield to the legitimate interest in personal privacy of individuals about whom the government maintains information for any of a variety of purposes. This Congressional judgment is embodied in FOIA Exemptions 7(C) and 6,[15] both of which provide an exemption from the Act's mandatory disclosure requirement for information which if released would result in an "unwarranted invasion of personal privacy." In determining the applicability of both, the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other. *See, e. g., Department of the Air Force v. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604; *Lesar v. U.S. Department of Justice*, —— U.S.App.D.C. ——, ——, 636 F.2d 472, 486 (1980); *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1136 (4th Cir. 1977) (per curiam).

Appellant contends that the district court failed to properly balance these competing interests in this case. Appellant argues that most of the information in question was not properly within Exemption 7(C)

because the individuals to whom it relates are high level government and corporate officials whose interest in privacy is at best minimal. FCG further urges that, in any event, this type of information is not of the type contemplated by the FOIA privacy exemptions. Finally, FCG argues that the district court underestimated the public interest in disclosure of this information.

■ At the outset, it should be noted that, while similar in scope and application, Exemptions 6 and 7 of the FOIA are distinguishable in two significant respects. First, while Exemption 6 refers to "a clearly unwarranted invasion of personal privacy," Exemption 7(C)'s reference is to an "unwarranted invasion of personal privacy." The omission of the word "clearly" from the Exemption 7(C) standard was a considered choice made during the passage of the 1974 amendments to that section, Pub.L. No. 93-502, § 2(b), 88 Stat. 1563,[16] and was intended to provide somewhat broader protection for privacy interests under Exemption 7(C) than normally afforded under Exemption 6. *Department of the Air Force v. Rose*, 425 U.S. at 378-79 n.16, 96 S.Ct. at 1607; *Congressional News Syndicate v. U.S. Department of Justice*, 438 F.Supp. 538, 541 (D.D. C.1977). While we do not attempt to quantify this distinction, we do observe its utility as a relevant benchmark.

reveal the identities of confidential sources was properly withheld under Exemption 7(D). 485 F.Supp. at 9.

**15.** FOIA Exemption 6 provides an exemption for:

[M]atters that are—

. . . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6).

**16.** One purpose of the 1974 amendments, among others, was to amend Exemption 7 to "clarify Congressional intent disapproving certain court interpretations which [had] tended to expand the scope of agency authority to withhold certain 'investigatory files compiled for law enforcement purposes'" S.Rep. No. 1200, 93d Cong., 2d Sess. 12 (Conf.Rep.1974), U.S. Code Cong. & Admin.News 1974, pp. 6267,

6291. Specifically, the provision's exemption for investigatory files compiled for law enforcement purposes had been broadly read to include any records which "were investigatory in nature and had been compiled for law enforcement purposes" *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 215, 229, 98 S.Ct. 2311, 2313, 2320, 57 L.Ed.2d 159 (1978) (*citing Weisberg v. United States Dept. of Justice*, 160 U.S.App.D.C. 71, 74, 489 F.2d 1195, 1198 (1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974)). The amendment to Exemption 7 which was offered on the floor by Senator Hart was intended to limit applicability of the exemption to certain enumerated circumstances, among them "to protect the privacy of any person mentioned in the files and not only the person who is the object of the investigation." 120 Cong.Rec. 17033-34 (1974) (remarks of Sen. Hart).

Second, the threshold criterion governing applicability of FOIA Exemption 6 is that the information be contained in personnel medical or similar files. By contrast, Exemption 7 is applicable to information contained in "investigatory records compiled for law enforcement purposes." In Exemption 6 cases, applicability of the exemption has been limited to information of an intimate or personal nature similar to that usually contained in an individual's personnel or medical files. *See Department of the Air Force v. Rose*, 425 U.S. at 377, 96 S.Ct. at 1606; *Board of Trade v. CFTC*, 200 U.S.App.D.C. 339, 346, 627 F.2d 392, 399 (1980). It appears, however, that this limitation is imposed by the specific threshold criterion of Exemption 6, *see Board of Trade v. CFTC*, 200 U.S.App.D.C. at 345, 627 F.2d at 398, and does not consequently place a similar limitation on invocation of the personal privacy provision of Exemption 7.

Furthermore, this second distinction serves to illuminate the reasoning behind the first. As Judge Pratt observed in *Congressional News Syndicate v. United States Department of Justice*, 438 F.Supp. 538 (D.D.C.1977):

> The difference in breadth in turn is attributable to the inherent distinctions between investigatory files and personnel, medical and similar files; that an individual's name appears in files of the latter kind, without more, will probably not engender comment and speculation, while, as the government argues here, an individual whose name surfaces in connection with an investigation may without more, become the subject of rumor and innuendo.

438 F.Supp. at 541. Thus, it is apparent that, contrary to appellant's contention, information in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption under 7(C). *Baez v. Department of Justice*, 208 U.S.App.D.C. 199, 209, 647 F.2d 1328, 1338 (1980); *Kuehnert v. FBI*, 620 F.2d 662, 667 (8th Cir. 1980) (*citing Librach v. FBI*, 587 F.2d 372, 373 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979); *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977)).[17]

Having determined that this information falls within the threshold requirements of Exemption 7(C), the question remains whether the district court properly struck the balance between the public interest in disclosure and the individual's interest in privacy. The traditional role of the prosecutor in our criminal justice system provides a relevant background against which to address the issues raised by this appeal.

As the district court properly noted, the decision to prosecute an individual for a crime is one typically entrusted solely to the prosecutor's discretion and rarely subject to judicial review or public scrutiny. 485 F.Supp. at 6; *see Newman v. United States*, 127 U.S.App.D.C. 263, 264, 382 F.2d 479, 480 (1967). *See also United States v. Bell*, 165 U.S.App.D.C. 140, 155, 506 F.2d 207, 222 (1974). The exercise of that discretion is properly informed by a variety of factors and not solely by the prosecutor's determination of the prognosis for a successful prosecution. *Nader v. Saxbe*, 162 U.S.App.D.C. 89, 92 n.18, 497 F.2d 676, 679 n.18 (1974).[18] Thus, it is apparent that the

---

17. It should be noted that at least one category of information, category E, *see* note 14 *supra*, would apparently meet the threshold requirement of Exemption 6 as well. In addition, deletions in category D, *see* note 14 *supra*, were upheld under Exemption 7(C) on the basis that release of that information would reveal the identity of confidential sources. These deletions were also upheld under Exemption 7(D). Thus it is unnecessary to determine to what extent that information is also properly withheld on the basis of Exemption 7(C). We note, however, that several cases have applied Exemption 7(C) to protect the identity of sources. *See, e. g., Maroscia v. Levi*, 569 F.2d 1000, 1003 (7th Cir. 1977); *Church of Scientology v. Dep't of State*, 493 F.Supp. 418, 421 (D.D.C.1980); *Kanter v. IRS*, 496 F.Supp. 1004, 1006–07 (N.D. Ill.1980).

18. *See also* ABA, Standards Relating to the Prosecution Function and the Defense Function § 3.9(b) (Supp.1971), which states:

ultimate decision not to prosecute does not necessarily reflect the prosecutor's assessment of the probable guilt or innocence of the accused.[19]

■ The decision to prosecute an individual for a crime is attended by consequences beyond the risk of conviction. When the individual or the crime has attracted general notoriety, institution of proceedings typically provokes widespread speculation attended by at least some damage to the reputation of the individual involved. Common experience teaches that this speculation is not quieted when, and if, a jury finally announces its verdict. Typically, the decision not to prosecute insulates individuals who have been investigated but not charged from this rather significant intrusion into their lives. In *Baez v. Department of Justice,* 208 U.S.App.D.C. 199, 647 F.2d 1328 (1980), this Court quoted with apparent approval from an affidavit submitted to the district court prepared by an agent of the Federal Bureau of Investigation as follows:

> To release the identities of these individuals and the information collected about them where it does not pertain to [appellant] would announce to the world that these individuals were targets of an FBI investigation. There can be no clearer

example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation.

208 U.S.App.D.C. at 209, 647 F.2d at 1338. Obviously, this is true, with equal if not greater force, as it pertains to individuals who were the subjects of investigations by WSPF.

Appellant contends, however, that where, as here, the individuals are public figures, high level government or corporate officials, their privacy interests are entitled to little, if any, consideration. This Court has already explicitly rejected the proposition that government officials, by virtue of their positions, forfeit their personal privacy for FOIA purposes. *Baez v. Department of Justice,* 208 U.S.App.D.C. at 210, 647 F.2d at 1339; *Lesar v. Department of Justice,* 204 U.S.App.D.C. at 215, 636 F.2d at 487; *accord, Nix v. United States,* 572 F.2d 998, 1006 (4th Cir. 1978); *Maroscia v. Levi,* 569 F.2d at 1002.[20] At the same time, there is a suggestion in those cases that public officials, by virtue of their positions, might be entitled to a lesser degree of protection than private citizens. *See, e. g., Lesar v. Department of Justice,* 204 U.S.App.D.C. at 215, 636 F.2d at 487.

---

The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence may exist which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are:
(i) the prosecutor's reasonable doubt that the accused is in fact guilty;
(ii) the extent of harm caused by the offense;
(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;
(iv) possible improper motives of a complainant;
(v) reluctance of the victim to testify;
(vi) cooperation of the accused in the apprehension or conviction of others;
(vii) availability and likelihood of prosecution by another jurisdiction.

*Id.* at 7–8.

19. The broad latitude traditionally afforded to prosecutorial discretion and the need to keep the process free from the inhibiting effect of public scrutiny prompted the district court's observation in regard to FOIA Exemption 5 that:

> The exemption is tailor-made for the situation in which the Special Prosecutor's Office was assessing the evidence it was compiling.

485 F.Supp. at 13. Because, however, we find that information withheld under Exemption 5 and challenged by appellant is also properly exempt under Exemption 7(C), we do not undertake to explore the applicability of Exemption 5 to information of this character.

20. In *Ferguson v. Kelley,* 448 F.Supp. 919 (N.D. Ill.1977), the court reached a contrary result in regard to the names of FBI agents. *Id.* at 923. Upon reconsideration, however, that court concluded that the personal privacy of the agents was cognizable under Exemption 7(C). *Ferguson v. Kelley,* 455 F.Supp. 324, 327 (N.D.Ill. 1978).

Appellant places significant reliance on *Common Cause v. National Archives and Records Service*, 202 U.S.App.D.C. 179, 628 F.2d 179 (1980). In *Common Cause*, this Court, remanding the case to the district court for further development of the factual record, observed:

[T]his case presents some special circumstances which have provoked different results in cases in our own district court. Without suggesting that the presence of these circumstances will always or even usually tip the balance in favor of disclosure under 7(C), we mention two. First, the individuals whose privacy interests are argued here were candidates for federal office, not private citizens. As such they may have been "public figures" with less privacy interest than others in information relating to their candidacies.

Second, the information sought about them concerned campaign contributions, contributions which were then and are now required by law to be reported publicly.

202 U.S.App.D.C. at 184, 628 F.2d at 184 (footnotes omitted).[21]

 We might be persuaded under appropriate circumstances that an individual's status as a "public figure" would tip the 7(C) balance in favor of disclosure. This is not, however, such a case. While such a status might somewhat diminish an individual's interest in privacy, the degree of intrusion occasioned by disclosure is necessarily dependent upon the character of the information in question. As we have already indicated, revelation of the fact that an individual has been investigated for suspected criminal activity represents a significant intrusion on that individual's privacy cognizable under Exemption 7(C). The degree of intrusion is indeed potentially augmented by the fact that the individual is a well known figure and the investigation one which attracts as much national attention as those conducted by the WSPF.[22] The disclosure of that information would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings. *Congressional News Syndicate v. United States Department of Justice*, 438 F.Supp. at 544.

 Likewise, we cannot say that in conducting the balance the district court gave insufficient weight to the public's interest in disclosure. In finding that the public interest in disclosure was insufficient to overcome the legitimate privacy interests of the individuals in question, the district court observed:

In the present case, all three branches of the Federal Government have thoroughly assessed the Watergate scandal, and it does not appear that any further prosecutions are anticipated at this time. It is, therefore, difficult to see how plaintiffs would be fulfilling their stated intention

---

**21.** The second factor referred to in the quoted excerpt comes from Judge Pratt's decision in *Congressional News Syndicate v. Dep't of Justice*, 438 F.Supp. 538 (D.D.C.1977). There, the court held that ledger sheets which had been in the possession of the WSPF listing corporate campaign contributions to various candidates had to be disclosed because:

[T]he Federal Corrupt Practices Act disclosure requirements strip contributors and recipients equally of whatever cloak of privacy their relationship would have had in the statute's absence. Federal Corrupt Practices Act, c. 368, tit. III §§ 303–04, 43 Stat. 1071 (1925), *repealed*, Pub.L.No.92–225, tit. IV, § 405, 86 Stat. 20 (1972).

438 F.Supp. at 543; *see Common Cause v. National Archives and Records Service*, 202 U.S.App.D.C. at 183–84 n.11, 628 F.2d at 183–

84 & n.11. This is not such a case. To the extent that information in the present files was of the same character as that in the *Congressional News Syndicate* case, and not otherwise exempt, the district court ordered its release. 485 F.Supp. at 7.

**22.** We do not mean to resurrect the government's "aura of Watergate" contention which, as noted by Judge Pratt in *Congressional News Syndicate v. Dep't of Justice*, is "flawed by overstatement." 438 F.Supp. at 543. We do recognize, however, that the degree of public attention which a particular investigation has attracted is a relevant consideration in striking the Exemption 7(C) balance. In such a case, public interest properly factors into both sides of the balance.

of exposing governmental wrongdoing under these circumstances.

485 F.Supp. at 6. This assessment standing alone might appear to understate the public interest in disclosure. When viewed within the total context of this case, however, it appears to express a view which we endorse, that the legitimate and substantial privacy interests of individuals under these circumstances cannot be overridden by a general public curiosity. *Rushford v. Civiletti,* 485 F.Supp. 477, 479–80 (D.D.C.1980), *aff'd mem.,* 656 F.2d 900 (D.C.Cir. 1981).

■ In sum, we do not state a *per se* rule that, in every case where individuals have been investigated but not charged with a crime, that information is properly exempt from disclosure under Exemption 7(C). We adhere to the view that any *per se* approach would be inconsistent with the Court's duty to balance *de novo* the privacy interests at stake against the public interest in disclosure. We do observe, however, that release of this type of information represents a severe intrusion on the privacy interests of the individuals in question and should yield only where exceptional interests militate in favor of disclosure.[23] No such circumstances being present in this case, the district court properly concluded that this information was exempt from disclosure.

## B. *Exemptions Pursuant to 5 U.S.C. § 552(b)(3) and Fed.R.Crim.P. 6*

The district court found that a substantial amount of information deleted from the documents was properly withheld on the basis of FOIA Exemption 3 which exempts from the Act's mandatory disclosure requirements:

[M]atters that are—

. . . .

(3) specifically exempt from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3). In this case, NARS and the district court relied upon Fed.R. Crim.P. 6(e), 18 U.S.C., as a relevant statute. Rule 6(e), which is reprinted in pertinent part below, provides, with certain exceptions, a prohibition on disclosure of "matters occurring before the grand jury."[24]

---

**23.** We make no attempt to delineate what factors might properly counsel a different result. We do observe that the result reached in the *Congressional News Syndicate* case, *see* note 21 *supra,* while never having been squarely before this Court, has at least been tacitly approved. *See Common Cause v. National Archives and Records Service,* 202 U.S.App.D.C. at 184–185, 628 F.2d at 184–85.

**24.** The Rule provides in pertinent part:
(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or a person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
(3) Exceptions.
(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
(i) an attorney for the government for use in the performance of such attorney's duty; and
(ii) such government personnel as are deemed necessary by an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.
(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law....
(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
(ii) when permitted by a court at the request of the defendant, upon a showing that

### 1. *Rule 6(e) as a Statute Under Exemption 3*

At the outset, appellant contends that the district court's reliance on Rule 6(e) was misplaced because the Rules of Criminal Procedure do not qualify as statutes for Exemption 3 purposes. The contention finds its genesis in this Court's decision in *Founding Church of Scientology v. Bell*, 195 U.S.App.D.C. 363, 603 F.2d 945 (1979) (per curiam). In *Scientology*, this Court held that a protective order entered in other litigation between the parties pursuant to Fed.R.Civ.P. 26(c) did not serve as an appropriate basis for invocation of Exemption 3 because the rule simply was not a statute.[25] Unlike Fed.R.Civ.P. 26(c), however, Fed.R. Crim.P. 6(e) was positively enacted by Congress.

Congress has delegated authority to prescribe rules for the conduct of criminal litigation in the federal courts to the United States Supreme Court. 18 U.S.C. § 3771.[26] Proposed rules become effective ninety days after the Chief Justice reports them to Congress. *Id.* Congress may, and does occasionally, suspend or modify the rules by enactment. *Cf. Walko Corp. v. Burger Chef Systems, Inc.*, 180 U.S.App.D.C. 306, 309 n.29, 554 F.2d 1165, 1168 n.29 (1977). Thus, rules of procedure typically take effect through Congressional inaction rather than Congressional action.

 Rule 6(e), however, was not enacted as a result of the ninety day layover provision of 18 U.S.C. § 3771. By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which were duly reported to Congress. Congress voted to delay the effective date of several of the proposed rules, among them Rule 6(e), "until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier." Pub.L. No. 94–349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e) in substantially its present form. Pub.L. No. 95–78, § 2(a), 91 Stat. 319 (1977).[27] It is quite apparent that by any definition Fed.R. Crim.P. 6(e) is a statute.

 Appellant apparently concedes that Rule 6(e), if a statute, satisfies the other criteria set forth in Exemption 3. We

grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
Rule 6(e), Fed.R.Crim.P., 18 U.S.C.

**25.** As stated by the Court:
Exemption 3 is explicitly confined to material exempted from disclosure "by statute," and the Federal Rules of Civil Procedure simply do not satisfy this description. They are issued by the Supreme Court under rulemaking powers delegated by Congress. Although proposed rules may be rejected by Congress, they are not affirmatively adopted by the legislature *as all statutes must be.*
*Founding Church of Scientology v. Bell*, 195 U.S.App.D.C. at 370, 603 F.2d at 952 (footnotes omitted). It should be observed that other factors also dictated the result in the *Scientology* case. First, a Rule 26(c) protective order is largely a creature of the district court's discretion and, though the rule provides some guidance to the exercise of that discretion, the Court did not find that guidance sufficient to satisfy the requirements of Exemption 3. *Id.* Second, the Court observed that "[a] Rule 26(c) order is issued to avoid injury in the context of a particular suit between particular litigants" and, as such, provides an inappropriate standard by which to answer the distinct question

pertaining to FOIA disclosure. *Id.* Neither of these observations are applicable to Fed.R. Crim.P. 6(e). It should also be noted that the *Scientology* holding stands in contrast to language contained in the Court's *en banc* decision in *Killough v. United States*, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962), describing Fed.R. Crim.P. 5(a) as, "though in form a rule, [having] the full effect of statutory law." 114 U.S. App.D.C. at 306, 315 F.2d at 242.

**26.** The equivalent provision delegating authority to prescribe rules for the conduct of civil litigation is at 28 U.S.C. § 2072. Although the procedure is essentially the same, it should be noted that 28 U.S.C. § 2072 explicitly provides that "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Id.*

**27.** Rule 6(e) was amended by the Supreme Court in 1979 but that amendment did not alter the provisions here in question. The 1977 Congressional modification of Rule 6(e) was intended to clarify some apparent imprecision in the language of the proposed rule regarding access to grand jury information by government personnel. *See* S.Rep. No. 354, 95th Cong., 2d Sess. 6 (1977), U.S.Code Cong. & Admin.News 1974, p. 527.

agree. The rule makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule. It further sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed. Any disclosure to persons outside of the government may only be made pursuant to a court order. Fed.R. Crim.P. 6(e)(3)(C). Therefore, the rule's ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3. *See American Jewish Congress v. Kreps,* 187 U.S.App.D.C. 413, 417, 574 F.2d 624, 628 (1978).[28]

### 2. *The Scope of Rule 6(e)*

Having determined that Rule 6(e) is a relevant statute within the meaning of FOIA Exemption 3, the only remaining inquiry is whether information withheld on that basis is actually included within the reach of the rule. *See Goland v. CIA,* 197 U.S.App.D.C. 25, 36, 607 F.2d 339, 350 (1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).[29] The legislative history and cases construing the rule indicate that it was intended to preserve the traditional rule of grand jury secrecy with certain limited exceptions. *See* S.Rep. No. 354, 95th Cong., 1st Sess. 7–8 (1977); *United States v. Tager,* 638 F.2d 167, 168 (10th Cir. 1980). *See also SEC v. Dresser*

*Industries, Inc.,* 202 U.S.App.D.C. 345, 359, 628 F.2d 1368, 1382 (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

Four exceptions to the general rule of secrecy are enumerated in the rule. The first two, involving limited disclosure to government attorneys and other government personnel, are clearly inapplicable. Rule 6(e)(3)(A). The remaining two permit disclosure pursuant only to a court order. The fourth permits disclosure to a criminal defendant for use in preparing a motion to dismiss an indictment. Rule 6(e)(3)(C)(ii). The only exception even arguably applicable to the present proceedings is that which permits disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding." Rule 6(e)(3)(C)(i). But an examination of the language and legislative history of that section reveals that it contemplates disclosure in the course of parallel civil proceedings and "does not include the very proceeding instituted for the purpose of obtaining disclosure." *Hiss v. Department of Justice,* 441 F.Supp. 69, 70 (S.D.N.Y.1977); *see* S.Rep. No. 354, 95th Cong., 1st Sess. 8 (1977); 123 Cong.Rec. 25196 (1977) (remarks of Rep. Wiggins).[30]

Thus, this case is governed by the general rule and not its exceptions. Because the exceptions have no application in

---

**28.** The cases which have considered the question, by one route or another, have uniformly concluded that grand jury information within the scope of Rule 6(e) is exempt from FOIA disclosure. *See, e. g., Thomas v. United States,* 597 F.2d 656, 657 (8th Cir. 1979); *Librach v. FBI,* 587 F.2d 372, 373 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979); *Murphy v. FBI,* 490 F.Supp. 1138, 1140 (D.D.C.1980); *Valenti v. U.S. Dep't of Justice,* 503 F.Supp. 230, 233 (E.D.La.1980); *Kanter v. IRS,* 496 F.Supp. 1004, 1006 (N.D.Ill. 1980); *Hiss v. Dep't of Justice,* 441 F.Supp. 69, 70 (S.D.N.Y.1977).

**29.** As this Court stated in *Goland*:

Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of the withheld material within that statute's coverage.

197 U.S.App.D.C. at 36, 607 F.2d at 350.

**30.** *See also Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). Justice Powell, writing for the Court, stated the rule pertaining to disclosure of grand jury information as follows:

From *Proctor & Gamble* and *Dennis* emerges the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that *the material they seek is needed to avoid a possible injustice in another proceeding,* that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

441 U.S. at 222, 99 S.Ct. at 1674 (emphasis added).

this FOIA case, reference to cases ordering disclosure of grand jury information for use in other proceedings based upon a showing of particularized need [31] are of only limited utility for our present purposes. Specifically, the present inquiry does not require the Court to balance the interest in continued secrecy against the particular interest in disclosure, *see Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979), but rather requires a determination of whether disclosure would, in the language of the rule, "disclose matters occurring before the grand jury." Rule 6(e)(2).[32]

■ We believe that the district court properly applied the rule to the information at issue in the present case. The rationale for maintaining grand jury secrecy has recently been restated by the Supreme Court:

First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements. There also would be a risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 219, 99 S.Ct. at 1673 (*citing United States v. Rose*, 215 F.2d 617, 628–629 (3d Cir. 1954)). In order to effectuate these objectives, the scope of the secrecy is necessarily broad. It encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." *SEC v. Dresser Industries, Inc.*, 202 U.S.App.D.C. at 359, 628 F.2d at 1382.

■ The district court upheld deletions under Exemption 3 for information: naming or identifying grand jury witnesses; quoting or summarizing grand jury testimony; evaluating testimony; discussing the scope, focus and direction of the grand jury investigations; and identifying documents considered by the grand jury and conclusions reached as a result of the grand jury investigations. 485 F.Supp. at 10; First Affidavit of James B. Rhoads, J.A. Exhibit 1, at 2. It is apparent that this information falls within the broad reach of grand jury secrecy as described above.

Disclosure of this information would reveal matters occurring before the grand jury and is, therefore, properly exempt from disclosure pursuant to FOIA Exemption 3 and Fed.R.Crim.P. 6(e). Witness names are clearly covered, as are documents subpoenaed as exhibits. Potential witnesses and potential documentary exhibits, while less clearly within the rule, if dis-

---

**31.** *See, e. g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 222, 99 S.Ct. at 1674; *Dennis v. United States*, 384 U.S. 855, 869, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966).

**32.** Thus, the chronological remoteness of grand jury proceedings bears no relevance to this FOIA inquiry. The general rule admits to no exception for old grand jury proceedings and whatever relevance that factor might have for a party seeking disclosure under Rule 6(e)(3)(C)(i) simply has no applicability to this case. Furthermore, it is quite clear that this factor alone does not remove grand jury information from the protection afforded by the general rule of secrecy.

For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.... Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 222, 99 S.Ct. at 1674.

closed would reveal the direction and strategy of the investigation.

■ This is not an instance where documentary information coincidentally before the grand jury would be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury. *See SEC v. Dresser Industries, Inc.*, 202 U.S.App.D.C. at 360, 628 F.2d at 1383; *United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Interstate Dress Carriers*, 280 F.2d 52, 54 (2d Cir. 1960). In this case, appellant seeks information from an entity whose possession of that information is directly linked to its role relating to the grand jury investigations. The relevant inquiry is not whether the party seeking the information has an interest other than in its role in a grand jury investigation but whether revelation in the particular context would in fact reveal what was before the grand jury. *See Murphy v. FBI*, 490 F.Supp. 1138, 1141 (D.D.C.198), vacated as moot, No. 80–518 (D.D.C. Jan. 8, 1981).

■ A passage from this Court's en banc decision in *SEC v. Dresser Industries, Inc.* will serve to illuminate the distinction between the situation addressed there and that present in this case. As stated by the Court in *Dresser*:

Dresser's documents at issue here were created for an independent corporate purpose, not directly related to the prospect of a grand jury investigation. The SEC has subpoenaed them directly from Dresser, without mention of the grand jury. They do not reveal what occurred before the grand jury; they reveal what occurred in Dresser's foreign operations. [Citation] The fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum. In fact, if the grand jury proceedings are genuinely secret, other agencies and courts will not know the subject matter of the grand jury investigation and thus will not be able to determine whether their own inquiry will overlap that of the grand jury.

202 U.S.App.D.C. at 359–60, 628 F.2d at 1382–83 (footnote omitted).[33] By contrast, these documents in the possession of WSPF were not obtained for any independent purpose but were obtained for use in grand jury investigations. As such, their disclosure would reveal matters occurring before the grand jury and is prohibited by Fed.R. Crim.P. 6(e) and the information is, as the district court properly concluded, exempt from FOIA disclosure under Exemption 3.

## C. *Attorney's Fees*

■ The FOIA provides that:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E). As this Court has recently observed:

[A] section 552(a)(4)(E) motion for fees and costs requires that two questions be asked and answered. 1) is the plaintiff "eligible" for such an award, and if so, 2) is it "entitled" to such an award? *See Crooker v. U. S. Department of the Treasury*, No. 80–1412 (D.C.Cir. October 23, 1980); *Fenster v. Brown*, 617 F.2d 740 (D.C.Cir.1979); *Cox v. United States Department of Justice*, 601 F.2d 1 (D.C.Cir. 1979).

*Church of Scientology of California v. Harris*, 209 U.S.App.D.C. 329, 332, 653 F.2d 584, 587 (1981). Eligibility is established by a determination that the moving party has "substantially prevailed" within the meaning of 5 U.S.C. § 552(a)(4)(E). *Id.*

■ Appellant predicates its eligibility for attorney fees not on that portion of

---

**33.** It should also be observed that Rule 6(e)'s prohibition on disclosure applies only to individuals who have had access to that information by virtue of their relationship to the grand jury investigation or under another provision of the rule. Rule 6(e)(2). Thus the rule conceivably would not even apply directly to the situation presented in the *Dresser* case.

the district court's judgment which ordered that portions of certain documents be released, but on the fact that after litigation had begun and the documents had been transferred to the custody of NARS a substantial number of documents were voluntarily released. The district court properly recognized that a court order compelling disclosure is not a necessary prerequisite to an award of fees. 485 F.Supp. at 14. *See, e. g., Cox v. United States Department of Justice*, 195 U.S.App.D.C. 189, 194, 601 F.2d 1, 6 (1979) (*per curiam*); *Cuneo v. Rumsfeld*, 180 U.S.App.D.C. 184, 189, 553 F.2d 1360, 1365 (1977); *Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App. D.C. 83, 89, 559 F.2d 704, 710 (1977). The district court went on to observe:

> It does appear to the court, nevertheless, that disclosure of much of the released material followed as a matter of course after the transfer of the investigatory files to the formal custody of the National Archives and Records Service where they were subjected to experienced and thorough FOIA processing. Although it is difficult to estimate with precision how many documents the defendant released in response only to this lawsuit, the present case was not one "of absolute resistance to disclosure before the plaintiff sought judicial review" ... [T]he court cannot find that the lawsuit had the causative effect upon the release of the information sought necessary to justify an award of attorney's fees.

485 F.Supp. at 15 (*quoting Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. at 95, 559 F.2d at 716). This is a finding of fact which is to be overturned only if clearly erroneous. *Crooker v. U. S. Department of the Treasury, slip op.* at 4 (*citing Cox v. Department of Justice*, 195 U.S.App.D.C. at 194, 601 F.2d at 6).

In holding that this finding was clearly erroneous, we rely in large part upon a factor which appears to have been overlooked by the district court; that is, appellant filed this action only after WSPF, in the early stages of processing this request, revealed that it would make only scant disclosures from the files in question. This is

not a case where a FOIA requester, impatient with justifiable delays at the administrative level, resorts to the "squeaky wheel" technique of prematurely filing suit in an effort to secure preferential treatment. To the contrary, appellant exhibited a cooperative understanding of the administrative burden until it became apparent that the administrative process was not about to yield that to which it was entitled under the Act. It seems clear that appellant had in fact encountered virtually "absolute resistance to disclosure before [seeking] judicial review." *Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. at 95, 559 F.2d at 716.

It is true that disclosure followed closely on the heels of processing in the more experienced hands of NARS. It is also true that WSPF with its reduced staff and in the process of winding down its operations was understandably ill-equipped to deal with a request of this magnitude. But it does not follow that these factors excuse the government's failure, albeit temporary, to comply with FOIA disclosure requirements. *Cf. Crooker v. Department of the Treasury, slip op.* at 4–5. Furthermore, the mere fact that a FOIA requester might have ultimately received the documents in question in the absence of litigation is not a sufficient basis for a finding that it has not substantially prevailed for purposes of an award of attorney fees. *See id.*

Rather, in addressing the question of whether a party who has received documents absent a court order requiring disclosure has substantially prevailed, the court must determine that:

> prosecution of the action could reasonably be regarded as necessary to obtain the information, *Vermont Low Income Advocacy Council, Inc. v. Usery*, [546 F.2d 509, 513 (2d Cir. 1976)] and that a causal nexus exists between the action and the agency's surrender of the information, *Cuneo v. Rumsfeld, supra*, 180 U.S.App. D.C. at 190, 553 F.2d at 1366.

*Cox v. United States Department of Justice*, 195 U.S.App.D.C. at 194, 553 F.2d at 6.

In this case, appellant was confronted by what amounted to a forthright and final administrative denial of its FOIA request prior to its initiation of the district court action. Thus, appellant was faced with a choice between accepting that determination or litigation. Appellant could not have reasonably been expected to persevere at the administrative level in the hope that an eventual transfer of custody of the documents would produce a more favorable response. From appellant's perspective, initiation of this lawsuit was the only reasonable means by which it could accomplish its goal.

Moreover, under the rather unique circumstances of this case, we believe that a sufficient causal nexus exists between this litigation and the release of the documents to warrant a determination that appellant is eligible for attorney fees. It appears that NARS undertook to review the documents in question, including those already reviewed by WSPF, in conjunction with the duty it inherited as defendant in this action to prepare a detailed justification for the items withheld.[34] It would further appear quite likely that in the absence of this liti-

gation and the need it imposed to specifically justify each deletion NARS would not have voluntarily undertaken to review those files already reviewed by WSPF. While it is probable that the inevitable transfer of these documents to the custody of NARS "was *a* cause of their release[,] [t]he initiation and prosecution of this litigation ... was in our opinion the direct cause of their disclosure." *Church of Scientology of California v. Harris,* 209 U.S. App.D.C. at 329, 334, 653 F.2d 584, 589; *see also Crooker v. U. S. Department of the Treasury,* U.S.App.D.C., *slip op.* at 4.[35]

Our holding that appellant is eligible for an award of attorney fees does not determine that appellant should in fact receive an award of fees. The ultimate resolution of this question requires the district court to determine whether appellant is also entitled to attorney fees. After finding that appellant had not substantially prevailed, the district court did not go on to address the factors which govern the decision whether to award fees to a party who has established eligibility. This Court has consistently left that question to be determined

---

**34.** NARS did not take over the processing of this request until June 20, 1977. This was nine months after FCG initiated this action and a year and a half after FCG had first submitted its reformulated request.

**35.** In *Crooker,* the government contended that a determination to release the requested document without deletion had in fact preceded the commencement of litigation and could not therefore have been a result thereof. The government, however, apparently through inadvertence, had failed to inform Crooker of this determination and had failed to respond to his repeated inquiries. In holding that Crooker was eligible for an award of fees, this Court stated:

> Some FOIA suits involve a forthright refusal by the government to release information or documents sought by complaining party. Here, the refusal was less forthright, and indeed not purposeful, but no less effective in denying release. The government cannot avoid the award of attorney's fees by ignoring or negligently failing to respond to repeated reminders that the bureaucratic machinery has not worked.

*Crooker v. U. S. Department of the Treasury,* U.S.App.D.C., *slip op.* at 4–5.

In *Scientology,* the government argued that 31 documents had been released not as a result

of litigation but as a result of their review under new guidelines established in a letter to agency heads from then Attorney General Bell. In rejecting this contention, Judge MacKinnon stated:

> The district court discounted the 31 documents released in June 1978 because it found that they "were released as a result of Attorney General Bell's letter" and not as a result of this litigation. We accept this finding to the extent that it acknowledges that the Attorney General's letter in the last analysis precipitated release of the documents and was *a* cause of their release. The initiation and prosecution of this litigation, however, was in our opinion the direct cause of their disclosure, for absent this litigation, following the unsuccessful administrative request, the 31 documents would never have been identified as falling within the scope of Scientology's FOIA request, and the documents would never have been evaluated to determine whether they should or could be released under the guidelines set forth in the Attorney General's letter.

*Church of Scientology of California v. Harris,* 209 U.S.App.D.C. 329 at 334, 653 F.2d 584, at 589.

in the first instance by the district court. *See, e. g., Church of Scientology of California v. Harris,* 209 U.S.App.D.C. at 336, 653 F.2d 584, at 591; *Crooker v. U. S. Department of the Treasury,* U.S.App.D.C., *slip op.* at 5; *Cox v. United States Department of Justice,* 195 U.S.App.D.C. at 195, 601 F.2d at 6. Accordingly, on remand the court should determine whether FCG is entitled to an award of fees.[36]

### III. CONCLUSION

We have determined that Exemption 7(C) of the FOIA, as a threshold matter, protects from disclosure the names of individuals who are investigated for suspected criminal activity but are never subsequently charged or indicted. While it is conceivable that high level government and corporate officials may have a somewhat diminished interest in personal privacy, we do not believe that fact tips the balance in favor of disclosure under the circumstances of this case. We have also concluded that Fed.R.Crim.P. 6(e) is an exempting statute within the meaning of FOIA Exemption 3. Applicability of the exemption depends solely on whether disclosure would reveal matters occurring before the grand jury. As the information withheld on that basis in this case met that requirement, the district court properly concluded that it is exempt from FOIA disclosure. Finally, we have concluded that FCG did "substantially prevail" in this action and is therefore eligible for an award of attorney fees. On remand, the district court should determine whether FCG is also entitled to an award of fees.

*Affirmed in part; reversed in part and remanded.*

---

**36.** This Court has on previous occasions identified at least four factors which should guide the district court's discretion in deciding whether to award attorney fees to a successful FOIA plaintiff. While the following list does not purport to be exhaustive, the district court should start with an examination of the following four factors: (1) public benefit derived from the case; (2) commercial benefit to the successful plaintiff; (3) the nature of the successful plaintiff's interest in the records; and (4) whether the agency had a reasonable basis in law for withholding the records. *See, e. g., Fenster v. Brown,* 199 U.S.App.D.C. 158, 160, 617 F.2d 740, 742 (1979).