**UNITED STATES of America,**
**Appellee,**

v.

**ALPINE LAND AND RESERVOIR COMPANY et al., Appellees,**
**Pyramid Lake Paiute Tribe, Applicant**
**for Intervention-Appellant.**

**No. 24156.**

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1970.

Rehearing Denied Oct. 2, 1970.

---

Robert D. Stitser (argued), Robert Leland, Reno, Nev., John P. Frank, Michael J. LaVelle, Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., for applicant for intervention-appellant.

Henry Depping (argued), Raymond Zagone, James W. Moorman, Attys., Shiro Kashiwa, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Bart M. Schouweiler, U. S. Atty., Las Vegas, Nev., for the United States.

E. J. Skeen (argued), Salt Lake City, Utah, Guild, Guild & Cunningham, Woodburn, Forman, Wedge, Blakey, Folsom & Hug, Reno, Nev., for Alpine Land, etc. and others.

Before KOELSCH and DUNIWAY, Circuit Judges, and CRARY, District Judge.*

CRARY, District Judge:

The Pyramid Lake Paiute Tribe (hereinafter The Tribe) appeals from an Order of United States District Judge Roger T. Foley, District of Nevada, filed January 6, 1969, denying motion of The Tribe to intervene as a defendant, counter-claimant and cross-complainant.

* Honorable E. Avery Crary. United States District Judge, Central District of California, sitting by designation.

The Tribe sought to intervene by motion filed last March 4, 1968, seeking adjudication of "the relative rights of all parties to this suit in and to the water of the Carson River and its tributaries." The motion to intervene was denied by the Court on the grounds that (1) it was not timely within the provisions of Rule 24(a), Federal Rules of Civil Procedure; (2) The Tribe has no interest in the waters of the Carson and, therefore, is not possessed of the requisite interest relating to the property or transaction which is the subject of the action, as required by Rule 24(a) and (b), supra; and (3) any interest The Tribe might have in the Truckee River water which might be the subject of diversion is adequately represented by the United States.

This Court concludes that, for the reasons hereafter discussed, The Tribe's motion to intervene was not timely made nor does The Tribe have the requisite interest in the subject matter of the instant litigation to entitle it to intervene.

## FACTUAL BACKGROUND

The within action was instituted by the United States in 1925 in the United States District Court, Nevada District, against more than four hundred original defendants to quiet title to the Government's rights and to fix the relative rights of the defendants to Carson River waters. Evidence was received by a Special Master between 1929 and 1940. In its Opening Brief, filed in 1941, the United States observed that there were 381 defendants who claimed 646 separate water rights to the Carson River for the irrigation of 49,700 acres of land *upstream* from the Lahontan Reservoir. See the sketch of the Carson-Truckee

**EXHIBIT A**

[A 2605]

River watersheds including Lahontan Reservoir, the Truckee Diversion Canal, Pyramid Lake and the Newlands Reclamation Project area, Exhibit A, to this opinion.

In June, 1949, the District Court entered a Temporary Decree and appointed a Water Master to administer the Carson River. A second Order, almost identical with that filed in June, 1949, was filed on March 24, 1950. These orders, and the appendix and exhibits thereto, incorporated therein by reference, are referred to as the "Temporary Decree". The Water Master has administered the Carson River waters under this Decree to the present time.

The Tribe, by its motion to intervene and pleadings filed in March, 1968, claimed it had water rights in the Truckee River and in Pyramid Lake. It seeks adjudication of the relative rights of all parties to the suit to the waters of the Carson and its tributaries and the enforcement of the "Temporary Decree" by the Water Master. On November 27, 1968, The Tribe moved to amend its pleadings requesting that the Secretary of Interior be made a party to the action.

The Tribe asserts that the Carson and Truckee rivers have been unitized under Regulations, 43 C.F.R. 418.1–5, and Order of the Under-Secretary of the Interior (32 Fed.Reg. No. 190, page 13733, Sept. 30, 1967) issued in February and September, 1967, and by the operation of the Newlands Reclamation Project, including the Truckee River Diversion Canal, whereby, under given circumstances, water would be diverted from the Truckee River to the Lahontan Reservoir on the Carson River. With respect to the use of waters for the Newlands Project, the Regulations (Section 418.3) adopted by the Department of Interior in 1967, supra, required maximum use of Carson waters in satisfaction of the Truckee-Carson Irrigation District water settlements and the minimizing of the diversion of the flow of Truckee waters to the Lahontan Reservoir for said District's use in order to make available to Pyramid Lake as much water as possible. The Newlands Project was and is operated by the said Irrigation District for and on behalf of the Government. Commenced in 1905, the Project was constructed by the Department of Interior under the Reclamation Act of June 17, 1902. [32 Stats. 388.] It lies downstream from the Lahontan Reservoir.

In support of its motion to intervene, The Tribe relies on its right to or interest in the waters of the Truckee as determined in the Decree in the case of United States v. Orr Water Ditch Co., No. A–3, District Nevada, 1946. That Decree declared the rights of the United States to Truckee River waters and the rights of the United States as to water from the Truckee River for the Newlands Project with a priority of 1902. It also decreed specified water rights in the Truckee for The Tribe for irrigation of certain lands on the Pyramid Lake Indian Reservation. This award had a 1859 priority and consequently vested in The Tribe water rights in the Truckee which take precedence over the rights to Truckee waters for the Newlands Project.

The United States has been and continues to seek, by negotiation, the largest water entitlement from the Carson River it can obtain for the Lahontan Reservoir, from which water is taken for the Newlands Project.

## THE MOTION TO INTERVENE WAS NOT TIMELY FILED

 Rule 24(a), Federal Rules of Civil Procedure, provides for the right to intervene "upon timely application." As noted above, The Tribe's motion to intervene was filed some forty-three years after the filing of the complaint and about twenty-seven years after the trial was concluded, and after the demise of most of the witnesses who testified from memory concerning early appropriations of Carson River waters.

The Tribe urges that it was first authorized to sue in its behalf by the en-

actment of Title 28, United States Code, § 1362, in 1966. That Section provides that the District Courts shall have original jurisdiction of all civil actions brought by any Indian Tribe or Band, with a governing body duly recognized by the Secretary of the Interior, wherein the controversy arises under the Constitution, laws or treaties of the United States. The aid of Section 1362 was not required to afford The Tribe the right to intervene in the within action, where jurisdiction was already vested in the Court, if the Tribe possessed the requisite interest in the subject matter of the suit. The Section was for the purpose of giving jurisdiction to United States District Courts of certain civil cases brought by Indian Tribes in their own name in the said courts where but for the statute the Court would not have had jurisdiction for lack of required amount in controversy, or otherwise. See Yoder v. Assiniboine and Sioux Tribes of Fort Peck Ind. Res., 339 F.2d 360 (9 C.A. 1964), where there was lack of jurisdictional amount in controversy, and Scholder v. United States, 428 F.2d 1123, 9th Circuit, 1970.

The Tribe also asserts that the Regulations, 43 C.F.R. 418–5, supra, which unitized the Carson and Truckee rivers were not issued until February, 1967, and that it did not, until that time, have reason to conclude that the United States was not representing its interests. It further contends that Rule 24, supra, does not apply to Indians.

The Regulations and Order, supra, relate only to the rights of the United States. They clearly provide for the benefit of The Tribe in that they maximize the use of Carson waters and minimize the diversion of Truckee waters for the Truckee-Carson Irrigation District's water entitlement. Neither the Regulations nor the Order indicate that The Tribe's interests were not being represented by the United States.

The "timely application" requirement of Rule 24 applies to Indians as well as other litigants. The Rule concerns a procedural matter and is not a statute of limitation barring substantive rights. The instant action is not one wherein The Tribe is about to lose water rights for failure to assert them. No water rights of The Tribe are being adjudicated by the Court in the instant case, as was true in the cases cited by appellant Tribe in support of its contention that The Tribe's motion to intervene was timely.

For example, the case of United States v. Ahtanum Irrigation District, 236 F.2d 321 (9 C.A. 1956), cited by the appellant, involved a suit filed by the United States as Trustee for an Indian Tribe to quiet title to the Indians' right to use waters of a creek allegedly reserved by treaty between the United States and The Tribe. The Court held that in the circumstances no defense of laches, estoppel, or delay, was available to defendants, observing at page 334 of the opinion that the law forbids acquisition of Indian lands, or any title or claim thereto, except by treaty or convention. The claims were to the waters *in suit*.

At the time The Tribe's motion to intervene was filed the Court was advised by the Government in its memorandum of points and authorities in opposition to intervention filed April 19, 1968:

"All that remains to be done in this case, as the court is aware, is to make certain substitutions, dispose of pending motions, and to enter a final decree. With the aid of the Water Master, Claude Dukes, the United States has prepared a list of substitutions which is substantially complete. In addition, plaintiff is presently engaged in what we believe to be fruitful negotiations with attorneys for the defendants to resolve a form of final decree that will eliminate the need for

filing of formal objections to the master's report."

Judge Foley points to the facts quoted above in his Order denying The Tribe's motion to intervene.

This Court concludes that The Tribe's motion to intervene was not timely made within the provisions of Rule 24(a) or (b), Title 28, United States Code.

## THE TRIBE IS WITHOUT INTEREST IN THE CARSON RIVER WATERS

■ The Tribe asserts that by reason of the unitized operation of the Carson and Truckee rivers and the provision for diversion of Truckee waters to the Carson to replace Carson waters used for the Newlands Project, that The Tribe's water rights in the Truckee River are involved.

The pending suit is to quiet title to water rights of the parties to the within action in only Carson River waters. The Tribe has no interest in the subject of this suit and its water rights to the Truckee River are not involved.

The Tribe may have water rights in the Truckee other than its rights to irrigation water from the Truckee, as determined by the Court in United States v. Orr Water Ditch Co., supra, under the principle announced in Winters Doctrine, Winters v. United States, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908).

In Arizona v. California, 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1962), the Supreme Court states:

"The Court in *Winters* concluded that the Government, when it created that Indian Reservation, intended to deal fairly with the Indians by reserving for them the waters without which their lands would have been useless. *Winters* has been followed by this Court as recently as 1939 in United States v. Powers, 305 U.S. 527, 59 S.Ct. 344, 83 L.Ed. 330. We follow it now and agree that the United States did reserve the water rights for the Indians effective as of the time the Indian Reservations were created. This means, as the Master held, that these water rights, having vested before the Act became effective on June 25, 1929, are 'present perfected rights' and as such are entitled to priority under the Act.

"We also agree with the Master's conclusion as to the quantity of water intended to be reserved. He found that the water was intended to satisfy the future as well as the present needs of the Indian Reservations and ruled that enough water was reserved to irrigate all the practicably irrigable acreage on the reservations."

The Tribe contends that the Winters Doctrine has been expanded, citing Alaska Pacific Fisheries Co. v. United States, 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918) (fishing rights); and Arizona v. California, supra.

If The Tribe has water rights in the Truckee not vested by the Decree in the *Orr Water Ditch Co.* case, supra, they may not properly be asserted or adjudicated in the within litigation. The issue of any possible additional rights of The Tribe to the waters of the Truckee are not before this Court and we make no determination thereof.

The Court concludes that Cascade Natural Gas Corp. v. El Paso Natural Gas, 386 U.S. 129, 87 S.Ct. 932, 17 L. Ed.2d 814 (1967), relied on by appellant, does not support The Tribe's position that it is affected within a "practical sense" under Rule 24(a) (3), Federal Rules of Civil Procedure. In the *Cascade* case, the Court held that the State of California and the Southern California Edison Company were entitled to intervene under Rule 24(a) (3) because they had an interest in the competitive system which the mandate in the first appeal in that case was designed to pro-

tect and which was being "adversely affected", within the meaning of the Rule, by a merger. Cascade was allowed to intervene under Rule 24(a) (2) by reason of its interest in the "transaction which is the subject of that action." [Opinion, p. 135, 87 S.Ct. p. 937.] Each applicant, the Court said, had an interest in the subject of the litigation which was entitled to protection. In the case at bench, The Tribe has no water rights in the Carson River and its claimed rights in the Truckee cannot be affected by the Decree adjudicating water rights in the Carson.

The Tribe's reliance on United States v. Martin, 267 F.2d 764 (10 C.A. 1959), is not well founded, as the intervenors in that case claimed a right to overflow waters of the Colorado River, the waters of which were the subject of a suit. The action was by the United States and sought an adjudication of water rights affected by a water diversion project financed with Federal funds. The intervenors, owners of ranch lands which lost the benefit of natural irrigation from overflow of the Colorado River, sought recovery for injuries sustained. Unlike the facts in the *Martin* case, The Tribe's rights to Truckee water have not been divested by the diversion of Truckee water to the Carson (Lahontan Reservoir).

The Tribe does not show how any settlement of this case will in any way alter its rights or interest in the waters of the Truckee as established by the Decree in United States v. Orr Water Ditch Co., supra, or otherwise. As noted above, The Tribe's interest in the Truckee has an 1859 priority and will be filled before water could be diverted by the owners of any subsequent interest or right. Any diversion to the Newlands Project, or subsequent project, which would encroach upon the earlier rights of The Tribe, would be a violation of the "Truckee River Decree", entered in the *Orr Water Ditch Co.* case.

The Order of the District Court denying the appellant Tribe's motion to intervene in the within action is affirmed.