## PYRAMID LAKE PAIUTE TRIBE OF INDIANS, Appellant

### v.

## UNITED STATES DEPARTMENT OF JUSTICE.

### No. 83–2102.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 1984.

Decided Dec. 14, 1984.

Mikva, Circuit Judge, dissented and filed opinion.

Commission's order, we clearly stated "that this subsequent order is not itself determina- tive...." *Triton I* at 1462.

Richard Dauphinais, Washington, D.C., for appellant.

Deborah R. Kant, Atty., U.S. Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before TAMM and MIKVA, Circuit Judges, and MACKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

Dissenting opinion filed by Circuit Judge MIKVA.

TAMM, Circuit Judge:

Appellant Pyramid Lake Paiute Tribe (Tribe) challenges the district court's denial of attorney's fees under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E) (1982). In a memorandum opinion and order issued August 18, 1983, United States District Court Judge Thomas A. Flannery found that 1) the Tribe's action to compel the production of correspondence between appellee Department of Justice (Department) and Senator Paul Laxalt was mooted by the release of the letter first by the Senator's Nevada office and subsequently by the Department; and 2) the Tribe was not entitled to attorney's fees because it had not "substantially prevailed" in its action against the Department within the meaning of the FOIA.

The Tribe appeals only the denial of fees, claiming that the district court erred in its finding that the Tribe had failed to establish the requisite causal nexus between the lawsuit and the Department's release of the letter. For the reasons given below, we affirm the district court.

## I. BACKGROUND

On August 13, 1981, the Tribe's attorney filed a FOIA request with the Department seeking all correspondence and records concerning the Department's decision on whether to appeal the district court's decision in *United States v. Alpine Land & Reservoir Co.,* 503 F.Supp. 877 (D.Nev. 1980), *modified,* 697 F.2d 851 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983).[1] On February 8, 1982, the Department released three documents, including an August 6, 1981 letter from Senator Paul Laxalt to Attorney General William French Smith.

On March 1, 1982, the Tribe requested all additional correspondence between the Department and Senator Laxalt dated after August 25, 1981 that related to the *Alpine* case. The Department found one document, described as "Attorney-General record," Joint Appendix (J.A.) at 44, but withheld it under the deliberative process privilege of exemption 5 of the FOIA, 5 U.S.C. 552(b)(5).[2]

Following an administrative appeal upholding the Department's decision, the Tribe on February 10, 1983 sued under the FOIA to compel the Department's release of the document. On March 14, 1983, the Department filed a motion for summary

---

1. In *Alpine,* the United States filed suit to adjudicate water rights in the Carson River. The Carson River serves, along with the Truckee River, the Newlands Reclamation Project. Concerned with the effect of the *Alpine* litigation on the Tribe's water rights in the Truckee River, the Tribe attempted to intervene in the case in 1968. The motion to intervene was denied by the district court and affirmed on appeal after the United States advised the court of appeals that it would represent the interests of the Tribe in the litigation. *United States v. Alpine Land & Reservoir Co.,* 431 F.2d 763 (9th Cir.1970). The dis-trict court entered a final decree in 1980. *Alpine,* 503 F.Supp. 877. The United States filed its notice of appeal in February 1981 and filed its opening brief on October 19, 1981.

2. Exemption 5 provides that the FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

judgment, arguing that the document was properly withheld under exemption 5. An accompanying affidavit described the document as a one-page letter from Senator Laxalt to Attorney General William French Smith dated October 7, 1981. The Tribe responded by filing a cross-motion for summary judgment contending that the Department's reliance on exemption 5 was unwarranted. While the motions were pending, the Tribe requested and received from Senator Laxalt's Nevada office a copy of the letter. The Department subsequently released its copy of the same letter, stating that because it had entered the public domain, the deliberative process privilege could no longer be invoked.

In response to these events, the district court dismissed the case as moot, holding that because the letter had been released by Senator Laxalt and the Department, a controversy no longer existed between the parties. The court further found that the Tribe was not eligible for attorney's fees under 5 U.S.C. § 552(a)(4)(E) because it had not established the requisite causal nexus between the lawsuit and the letter's release. The Tribe appeals the denial of fees.

## II. Discussion

■ Before a court may award attorney's fees under 5 U.S.C. § 552(a)(4)(E), it must determine first, whether the plaintiff is *eligible*, and, if so, whether the plaintiff is *entitled* to such an award.[3] *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981); *Cox v. United States Department of Justice*, 601 F.2d 1, 6 (D.C.Cir. 1979). Although a plaintiff is eligible only if he has substantially prevailed, a court order compelling disclosure is *not* a condition precedent to an award of fees. *Foster v. Boorstin*, 561 F.2d 340, 342 (D.C.Cir. 1977). Absent such an order, however, the plaintiff must show that "prosecution of the action could reasonably be regarded as

necessary to obtain the information ... and that a causal nexus exists between that action and the agency's surrender of the information." *Cox*, 601 F.2d at 6 (citations omitted). The findings of fact underlying the court's determination that the plaintiff has failed to make this showing are reviewed under the clearly erroneous standard. *Public Law Education Institute v. United States Department of Justice*, 744 F.2d 181 at 183 (D.C.Cir.1984).

■ The district court found that the Tribe was not eligible for an award because it had not met its burden of establishing a causal nexus between the suit and the Department's release of the October 7, 1981 letter. The Tribe does not challenge the legal standard applied by the trial court. Rather, it argues that the district court erred because such a finding ignores the connections between the lawsuit, Senator Laxalt's release, and the Department's subsequent release. The Tribe asserts that only after the suit was filed did the Department in its affidavit in support of its motion for summary judgment specifically identify the withheld document as an October 7, 1981 letter from Senator Laxalt to the Attorney General. Without this specific information, the Tribe could not have identified the letter in a manner sufficiently specific to obtain a copy from the Senator's office. Had Senator Laxalt's office not released the letter, the Department never would have released its copy. This chain of events establishes, the Tribe argues, the requisite causal nexus between the lawsuit and the Department's release of the letter.

We disagree. The crucial question is whether the details disclosed in the Department's affidavit (exact date and recipient) were necessary for the Tribe to obtain the letter from the Senator's office.[4] In light

---

**3.** 5 U.S.C. § 552(a)(4)(E) provides:

The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

**4.** The Tribe also contends that it "substantially prevailed" because Senator Laxalt's release of the letter proves that the Department unjustifiably relied on exemption 5. Such an argument fails for two reasons. First, the district court held that the question of the applicability of

of the information the Tribe already had, it is unlikely that those details played a significant role. The Tribe's second FOIA request, submitted to the Department on March 1, 1982, sought "any additional correspondence between the [Department] and Senator Laxalt concerning the appeal of the *Alpine* case from August 25, 1981 to the present." J.A. at 41. The request further stated that this correspondence would be found "in the records of the Lands & Natural Resources Division, the Deputy Attorney General's office, and/or the Attorney General's office." *Id.* The Department responded by stating that it had located (but was withholding) one document, described as "Attorney General record." J.A. at 44.

From its second request and the Department's response, the Tribe knew that 1) the Department was withholding correspondence regarding the *Alpine* litigation between Senator Laxalt and the Department; 2) the letter was dated sometime between August 25, 1981 and March 1, 1982; and 3) the letter was to or from either the Attorney General or someone in his office. The Tribe also knew that Senator Laxalt had written to the Attorney General on August 6, increasing the likelihood that the withheld correspondence was between the Senator and the Attorney General himself. Finally, the Tribe knew that the appellant's opening brief in the *Alpine* case was filed on October 19, 1981. From that fact, it reasonably could have inferred that the date of the letter was sometime between August 25 and late October 1981.

Armed with these facts, the Tribe did not request a copy of the letter from the Senator. Instead, it sued under the FOIA to compel the Department to produce the letter. As a result of that suit, the Tribe learned the exact date of the letter, October 7, 1981, and that it was from Senator Laxalt to the Attorney General. Given the quite specific information the Tribe already possessed regarding the letter, it is difficult to believe that the two facts revealed in the affidavit were necessary for the Tribe to obtain a copy of the letter from Senator Laxalt. Although it is plausible that knowledge of the exact date may have expedited the office's search for the letter, it is highly unlikely that it served any other purpose.

Furthermore, the Tribe presented no evidence that indicated what prompted Senator Laxalt's release of the letter. Nothing suggests that the lawsuit in any way influenced the Senator's decision to release the document. *See Public Law Education Institute v. United States Department of Justice*, 744 F.2d 181 (D.C.Cir. Sept. 18, 1984) (where nothing indicates that lawsuit triggered the agency's release of documents in an unrelated criminal case, no causal nexus exists between the suit and the agency's later release of the same documents to plaintiff). Absent any evidence on the matter, the natural inference is that the Senator was simply responding to the Tribe's request. The district court specifically found that the Senator, "on his own initiative decided to release the letter." J.A. at 73.[5] We cannot say that conclusion is clearly erroneous. The series of events described by appellant does not even show a causal nexus between the lawsuit and the Senator's release of the letter, let alone between the lawsuit and the Department's release.

We emphasize that the Tribe must demonstrate a direct causal nexus between the lawsuit and the Department's release of the letter. Although the initial third-party

---

exemption 5 was mooted by the release of the letter, and neither party contests that ruling. Second, whether reliance on exemption 5 was or was not appropriate is irrelevant to a determination of the only question raised by this appeal: does a causal nexus exist between the lawsuit and the Department's release of the letter?

5. There is no reason to think that Senator Laxalt would have been reluctant to release his copy of the letter to the public either before or after the suit was filed—as the Tribe itself acknowledges. *See* Brief for Petitioner at 20. ("[T]he Senator did not fear publication of his views on the *Alpine* litigation. It is, in fact, likely that *Senator Laxalt welcomed the publication of those views.*") (Emphasis added).

release of a document at issue does not necessarily preclude a finding of a direct causal nexus, we know of no case, and have been cited to none,[6] finding such a nexus where the purported causal link and evidence supporting it was as tenuous as herein.

It is the plaintiff's burden to present evidence establishing a direct causal nexus in order to be eligible for attorney's fees under the FOIA. The plaintiff did not sustain that burden in this case.

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

MIKVA, Circuit Judge, dissenting:

I cannot assent to the court's disposition of this case. The majority would be correct in deeming the Pyramid Lake Paiute Tribe ineligible for an award of attorney fees if the Tribe's lawsuit had in fact played no "significant role" in the ultimate release of Senator Laxalt's October 1981 letter to Attorney General Smith. Maj. op. at 120. Although we have made clear that fees may not be denied under the Freedom of Information Act merely because a plaintiff "might have ultimately received the documents in question in the absence of litigation," *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 871 (D.C. Cir.1981), we nevertheless have consistently required some kind of "causal nexus" between the plaintiff's court action and the surrender of the requested information, *e.g., id.* But I do not believe that the district court in this case tested properly for causal nexus, or that we are in a position to make the necessary factual determination in the district court's stead.

The district court found that the Department of Justice had released the letter only because Senator Laxalt had earlier made the document public "on his own initiative." On that basis, the district court concluded that the Tribe had "failed to establish the causal nexus between this action and the letter's release"—ignoring the Tribe's claim, uncontroverted below, that information garnered through the litigation led directly to the Tribe's receipt of the letter from one of Senator Laxalt's Nevada offices. If that claim is true, the causal nexus requirement is fully satisfied. *See Education-Instruccion v. United States Department of Housing & Urban Development*, 87 F.R.D. 112, 114–15 (D.Mass. 1980), *aff'd on other grounds*, 649 F.2d 4 (1st Cir.1981).

On the record before us, I cannot say with confidence that the information provided in the government's summary judgment motion did not play a "significant role" in helping the Tribe to obtain a copy of the withheld document. Perhaps Senator Laxalt's office would have responded just as positively to a more general request; perhaps not. That question ought not be answered in the dark. And, since the factual predicate of the Tribe's argument was not challenged before the district court, I do not think the Tribe should be prejudiced by its failure to file a supporting affidavit.

I would remand this case with instructions to the district court to make the necessary factual determination.

---

**6.** The Tribe's reliance on *Education-Instruccion v. United States Department of Housing and Urban Development*, 87 F.R.D. 112 (D.Mass.1980), is misplaced. In *Education-Instruccion*, the plaintiff obtained two of its requested documents from a third-party source because of information obtained from documents released as a result of the lawsuit. In *Education-Instruccion*, however, the plaintiffs were able to identify the third-party source *itself* as a result of information received as a consequence of the suit. That Senator Laxalt represented an alternative source of the document was known to the Tribe even before the filing of the suit.