**REPUBLIC OF NEW AFRIKA, et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civ. A. No. 78–1721.**

United States District Court, District of Columbia.

Sept. 26, 1986.

Jeffrey Haas, Chicago, Ill., pro hac vice.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, Senior District Judge.

### I. FACTS

On April 30, 1975, a member of the Republic of New Afrika ("RNA") sent a letter to the Federal Bureau of Investigation ("FBI") requesting the release of certain information pertaining to, *inter alia,* the FBI's dealings with the RNA. Three and one-half years later, the RNA and two individuals filed a lawsuit against the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1982), in order to obtain documents which the agency was stated to have improperly exempted or failed to recognize. This Court granted the government's motion for summary judgment. *Republic of New Afrika v. Federal Bureau of Investigation, et al.,* Memorandum, No. 78–1721 (D.D.C July 29, 1985) ("Memorandum").

The Court's holding was based upon an *in camera* inspection of materials, selected by the plaintiffs, to determine whether the FBI had properly invoked FOIA exemptions. In recognition of the time constraints on the Court, the plaintiffs agreed that the Court's conclusions regarding this representative sample would govern all of the claims raised in their complaint. The Court's decision that the FBI had provided all the materials to which the plaintiffs had

a right pursuant to FOIA foreclosed any further action by plaintiffs.

Despite this adverse decision, plaintiffs (hereinafter "the RNA") now petition for an award of attorney fees and costs under FOIA. The RNA claims that although this Court found the FBI had properly withheld material under the exemptions, the lawsuit against the government nevertheless caused the release of thousands of other pages of FBI materials previously withheld, thereby making the plaintiffs eligible for and entitled to an award of fees and costs. After a thorough consideration of the facts and the applicable law, the Court finds that such an award would not comport with the statutory design of FOIA and so denies the RNA's request for relief.

### II. DISCUSSION

The Freedom of Information Act provides that a District Court may

assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E) (1982). The parties agree that application of this provision requires a two-pronged inquiry: 1) have the petitioners demonstrated that they are "eligible" candidates for attorney fees, and if so, 2) are they "entitled" to receive such an award? *Weisberg v. U.S. Department of Justice,* 745 F.2d 1476, 1495 (D.C.Cir.1984), *reh'g denied,* 763 F.2d 1436 (1985); *Fund For Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 870 (D.C.Cir.1981).

#### A. *Eligibility*

Under the express terms of FOIA, a recovery of attorney fees depends upon a court's concluding that a petitioner has "substantially prevailed" in its efforts to obtain materials under the statute. *Weisberg,* 745 F.2d at 1496. To substantially prevail, the petitioner must prove that prosecution of the action "could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists

between that action and the agency's surrender of that information." *Cox v. Department of Justice*, 601 F.2d 1, 6 (D.C. Cir.1979).

### 1. *Requirement that RNA's Action to Obtain FOIA Documents Was Reasonably Necessary*

█ When probing whether it is reasonably necessary for one requesting FOIA information to file a lawsuit against an agency, a court must bear in mind that necessity can be determined only from the perspective of a reasonable person in the FOIA petitioner's circumstances at the time of filing. *See Fund for Constitutional Government*, 656 F.2d at 872. Considering the circumstances of this case, a reasonable party in the RNA's place would have found it necessary to file a lawsuit.

In its earlier opinion, the Court found that the FBI did release a significant number of documents to the RNA, *Memorandum, supra*, No. 78–1721, at 2 n. 2. Nevertheless, the RNA concluded that the FBI had not searched its files for certain information clearly within its original FOIA request and questioned the FBI's authority to withhold these items. The RNA was confronted by a situation where it had to either accept the FBI's determinations concerning what the agency would process and release, or it had to compel the FBI to reevaluate its position. From the RNA's perspective, initiation of a lawsuit was reasonably necessary—perhaps the only means by which it could accomplish its goal. *See Fund For Constitutional Government, supra*, 656 F.2d at 872.[1]

### 2. *Requirement That There Was A Causal Nexus Between RNA's Legal Action And The FBI's Document Releases*

In order for the RNA to be eligible for attorney fees, this Court must also find that RNA's lawsuit to compel the FBI to comply with FOIA was a primary cause of the FBI's release of documents. *Weisberg, supra*, 745 F.2d at 1496. The burden is on the plaintiff to demonstrate a direct cause-and-effect relationship, *Pyramid Lake Paiute Tribe v. United States Department of Justice*, 750 F.2d 117, 121 (D.C. Cir.1984), and the requirement is a rigorous one. *Public Law Education Institute v. United States Department of Justice*, 744 F.2d 181, 184 n. 4 (D.C. Cir.1984). Nevertheless, the RNA satisfies its burden.

In fact, this Court issued no direct orders requiring the FBI to release information. But, while a court's order compelling the release of FOIA information would establish the litigation as the cause of such disclosure, it is well settled in this Circuit that a court's judgment ordering a defendant to release FOIA documents is not a prerequisite for a recovery of attorney fees under the statute. *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 707–08 (D.C.Cir.1977).

█ Despite the absence of any direct order from this Court, the RNA's lawsuit was the cause of the FBI's release of some of the FOIA material requested. Even though this Court did not order the defendant to release specific documents, it did order the defendant to process certain materials which the FBI had refused to review. *Republic of New Afrika v. Federal Bureau of Investigation, et al.*, Order, No.

---

1. Notwithstanding this conclusion, the FBI contends that inquiries probing reasonable cause must include an examination of whether an agency's efforts to comply with FOIA were made in good faith. *See Weisberg, supra*, 745 F.2d at 1496. The RNA's FOIA requests, which forced the FBI to identify 52,728 pages of documents, were patently time-consuming. Defendant claims that it reacted "as expeditiously as possible in light of existing backlogs." Defendant's Brief at 3. Defendant relies on *Lovell v. Department of Justice*, 589 F.Supp. 150 (D.D.

C.1984), which holds that "[if] an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit." *Id.* at 153–54. However, the Court already has found that the FBI completely denied the existence of certain information which was proved to exist. Under these circumstances the reasoning of *Lovell* is inapposite.

78–1721, (D.D.C. Dec. 4, 1978). As a consequence, the FBI disclosed certain documents to the RNA that it otherwise would not have released.[2] The eventual disclosure of the information in these files represents materials that the RNA could not have obtained "but for" its litigation. *Church of Scientology of California v. Harris,* 653 F.2d 584, 588 (D.C.Cir.1981).[3]

In addition, the RNA's persistence forced the FBI to quicken the pace of its disclosures. *See, e.g., Republic of New Afrika v. Federal Bureau of Investigation, et al.,* Order, No. 78–1721 (D.D.C. Oct. 23, 1978) (requiring defendant to produce a *Vaughn* Index within 70 days where the FBI proposed a timetable of one year). *Cf. Public Law Education Institute, supra,* 744 F.2d at 184 n. 4.

In sum, the record supports the RNA's contention that its legal action "actually provoked" the defendants' release of certain FOIA materials. *Cox, supra,* 601 F.2d at 7. This finding of a causal nexus added to the conclusion that the RNA's lawsuit was reasonably necessary requires a holding that the RNA is eligible for attorney fees.

### B. *Entitlement*

■ However, eligibility should not be confused with entitlement. Although a plaintiff may be eligible to recover attorney fees, this Court must also decide whether such fees are appropriate. *Fenster v. Brown,* 617 F.2d 740, 742 (D.C.Cir.1979). The law of this Circuit limits a court's discretion in this decision by requiring it to consider at least four factors before reaching a conclusion. A court must consider

"(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *LaSalle Extension University v. Federal Trade Commission,* 627 F.2d 481, 483 (D.C.Cir.1980).

These criteria facilitate two policies that underlie the FOIA's attorney fees provision. First, an award of attorney fees is meant to encourage individuals to make use of FOIA in cases where the benefits will accrue to the public. *LaSalle Extension University, supra,* 627 F.2d at 484. Second, the awards are intended to compensate victims of agency obduracy and to deter agencies from engaging in further behavior not in keeping with FOIA's aims. *Id.* Because these policies promote multiple congressional goals, a court should not regard any one factor as conclusive. *Id.*

### 1. *Benefit to the Public From RNA's Lawsuit*

The RNA claims that the massive number of documents placed in the public domain will benefit the public, because it evidences FBI policies to disrupt groups like the RNA. Such information, it argues, is the kind "likely to add to the fund of information that citizens may use in making vital political choices." *Fenster, supra,* 617 F.2d at 744. If the material is of this sort, then there is legitimate public benefit. *Id.*

There has in fact been little or no public benefit as a result of the RNA's legal

---

2. The Court's order required the FBI to process a series of documents referred to as Schedule A. The FBI contended, and still contends, that certain information in this Schedule was not within the scope of the RNA's FOIA request. Defendant's Brief at 6. In fact, this position is untenable. Among the documents in Schedule A is a file on an FBI informer named "Spells," who was planted in the RNA. The plaintiffs' original FOIA request expressly requested any files relating to FBI informants involved with the RNA. The eventual disclosure of the information in these files represents materials which

the RNA could not have obtained "but for" its litigation.

3. In fact, more than three-quarters of the 40,000 documents ultimately released were released during the course of the RNA's litigation. Only 8,300 documents were released between 1975 and 1978 (the period after the RNA's FOIA request but before the instigation of litigation). These figures convince this Court that the FBI required a judicial prod to advance its disclosures. *See Church of Scientology of California, supra,* 653 F.2d at 590.

action. While the release of any government documents may generally and indirectly benefit the public, this is not the kind of benefit Congress envisioned. *Id.; Simon v. United States,* 587 F.Supp. 1029, 1032 (D.D.C.1984). Dissemination of information is a factor in determining whether the public has benefitted from FOIA disclosures. *Fenster,* 617 F.2d at 744. The RNA concedes that it has not made its discoveries public.

### 2. *Commercial Benefit to the Complainant*

The legislative history of FOIA indicates congressional intent to allow recovery of fees where the complainant was indigent or a nonprofit interest group as compared with a typically commercial endeavor. S.Rep. No. 93–854, 93rd Cong., 2d Sess. 19 (1974). Because the RNA's stated goal is to provide a future basis for challenging the legality of government actions and to expose FBI practices, it claims to have non-commercial interests in the lawsuit. Moreover, the RNA warns that if indigent groups like itself are effectively denied access to the FOIA, the policy incentives underlying the Act's provision for attorney fees will be thwarted.

The Court finds the RNA's action is not properly characterized as a public service. The RNA sought documents about its activities in order to aid its litigation against officials of the Department of Justice, a civil proceeding for substantial money damages instituted by the RNA's leader, Imari Obadele. *See Obadele v. Smith, et al.,* Civ. Action No. 80–1844 (D.D.C. June 7, 1984), *aff'd in part, rev'd in part,* 791 F.2d 210 (D.C.Cir.1986). The RNA admits to using information from its FOIA action in this suit for damages.

Recent case law in this district instructs that the use of FOIA as a substitute for civil discovery is improper and should not be encouraged by an award of attorney fees. *Simon, supra,* 587 F.Supp. at 1033.

**4.** To the contrary, although several years have passed since the RNA and its writers came into possession of the material released under the

The inescapable conclusion is that the RNA was not simply acting as a nonprofit, public interest group.[4] In such a case, the award of attorney fees is less appropriate since there is sufficient incentive for parties to bring suit under FOIA regardless of whether fees and costs are recovered under the Act.

### 3. *RNA's Interests in the Records Sought*

The RNA states that its primary purpose was to benefit the public by disclosing the practices of the FBI. Nevertheless, it concedes that, *inter alia,* its purpose was to exonerate certain of its members from criminal prosecution, *see, e.g., United States v. James,* 408 F.Supp. 527 (S.D.Miss. 1973), *aff'd in part, rev'd in part,* 528 F.2d 999 (5th Cir.1976), *cert. denied sub nom. Henry v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976), by proving that the FBI's attack on its "capital" was part of a program to harass, disrupt, and neutralize the organization. It contends that every party that makes a FOIA request has some individualized interest and that such an interest should not defeat its application for fees. Such reasoning cannot lie. The Court finds that the RNA's motive here was to exonerate its members of criminal charges and to circumvent civil discovery by using FOIA requests to bolster its claims. Purely personal FOIA requests are of no interest to anyone but the plaintiff. *Simon, supra,* 587 F.Supp. 1032.

### 4. *FBI's Basis For Withholding FOIA Records*

The legislative history of FOIA demonstrates that under the fourth criterion, Congress

> would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester.

FOIA, there has been no dissemination of this information to the public.

S.Rep. No. 93–854, 93d Cong., 2d Sess. 19 (1974). In *Simon, supra,* 587 F.Supp. at 1032, the district court held this test to be one of good faith. The court wrote that to prove bad faith a plaintiff must show that the government purposefully withheld FOIA documents, not that it merely delayed in producing them. *Id.* Notwithstanding such evidence, the government may still prove good faith if it can show that it had a reasonable basis in law for withholding; it need not prove that the information was in fact exempt, but need only show that it was not unduly recalcitrant or otherwise obdurate. *LaSalle Extension University, supra,* 627 F.2d at 486.

In the instant case, the RNA contends that the majority of the materials were withheld in bad faith evidenced by recalcitrance and obduracy. The Court has already rejected the RNA's allegations of bad faith, finding, after its *in camera* review of materials designated for exemption, that the RNA's charges were without foundation. *Memorandum, supra,* at 14. n. 16.

The FBI's refusal to throw open all its files and its unwillingness to release information about which it felt genuine uncertainty does not give rise to the bad faith alleged by the RNA. *Fenster, supra,* 617 F.2d at 744. As a matter of record, this Court did order the FBI to process certain files which otherwise would not have been searched. *Republic of New Afrika, supra,* Order of Dec. 4, 1978. Certain of these documents were ultimately released. However, the bare fact that a court order was required to obtain the government's review of certain files does not make its motives *ipso facto* wrongful; the facts indicate that the FBI did have a colorable, though erroneous, basis in law for its initial withholding. *Cf. LaSalle Extension University, supra,* 627 F.2d at 486.

The FBI's delay in producing documents does not necessarily amount to proof of obdurate behavior or bad faith, especially since the RNA was equally to blame for any delays because it failed to pay repro-

duction costs in a timely fashion. *See Republic of New Afrika, supra,* Order of Oct. 23, 1978. Indeed, the Government ought not to be made to pay for delays at least partially caused by the RNA. *See Weisberg,* 745 F.2d at 149.

Thus, although under the terms of the FOIA, and the case law interpreting it in this Circuit, the RNA is an eligible candidate for attorney's fees, such an award would neither benefit the public nor serve as a deterrent to agency obduracy. Under these circumstances, plaintiff has failed to demonstrate entitlement to attorney's fees, and so the plaintiff's motion is denied.