**MARYLAND DEPARTMENT OF HUMAN RESOURCES, et al., Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, et al., Defendants.**

**Civ. A. No. 89–1607 SSH.**

United States District Court, District of Columbia.

May 23, 1990.

Mark J. Davis, Asst. Atty. Gen., Balti-more, Md., for plaintiffs.

Daniel J. Standish, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

In July of 1989, the Maryland Department of Human Resources filed a complaint challenging defendants' use of Program Instruction No. 82–06 (PI 82–06) as arbitrary and capricious. Defendants filed a motion for judgment on the pleadings and for dismissal. Plaintiffs filed a cross-motion for judgment, asking this Court to invalidate PI 82–06, to remand for further proceedings, and to award to plaintiffs fees and costs incurred as a result of a request under the Freedom of Information Act (FOIA). Upon consideration of defendants' motion, plaintiffs' opposition thereto, plaintiffs' motion, defendants' opposition thereto, and the entire record, defendants' motion is granted.

### Background

■ Congress enacted the Adoption Assistance and Child Welfare Act (the Act) in 1980, which amended Title IV–B of the Social Security Act and created Title IV–E to reimburse states for foster care maintenance. Adoption Assistance and Child Welfare Act of 1980, Pub.L. No. 96–272, 94 Stat. 519 (1980) (codified at 42 U.S.C. § 627 (1988)). The Act provides additional appropriations to a state if the state:

(1) has conducted an inventory of all children who have been in foster care under the responsibility of the State for a period of six months preceding the inventory, and determined the appropriateness of, and necessity for, the current foster placement, whether the child can be or should be returned to his parents or should be freed for adoption, and the services necessary to facilitate either the return of the child or the placement of the child for adoption or legal guardianship; and (2) has implemented and is operating to the satisfaction of the Secretary—

(A) a statewide information system from which the status, demographic characteristics, location, and goals for the placement of every child in foster care or who has been in such care within the preceding twelve months can readily be determined;

(B) a case review system (as defined in section 675(5) of this title) for each child receiving foster care under the supervision of the State; and

(C) a service program designed to help children, where appropriate, return to families from which they have been removed or be placed for adoption or legal guardianship.

42 U.S.C. § 627.

Congress explicitly defined a "case review system" as a procedure for assuring that each state (A) designs a case plan for each child in the child's best interests, (B) periodically reviews the status of each child no less than every six months to determine the necessity and appropriateness of a placement, and (C) holds a dispositional hearing for each child no later than 18 months after an original placement to determine future status. 42 U.S.C. § 675.

In June of 1982, defendants issued PI 82–06. PI 82–06 explicitly sets out the language of § 627 and describes both a sampling method and pass rates based on those samples.

Pursuant to this guideline, plaintiffs submitted to the regional office of the Administration for Children, Youth and Families (ACYF) certification for eligibility of § 627 funds for fiscal years 1981, 1982, and 1983.[1] The regional office recommended eligibility for 1981, but recommended denial of funds for 1982 and 1983. The ACYF Commissioner afforded plaintiffs the opportunity to submit additional information, upon which plaintiffs presented further evidence. The Commissioner's final determination granted plaintiffs § 627 funds for 1981, but denied eligibility for fiscal years 1982 and 1983. Plaintiffs appealed these

---

1. States submit case samples to ACYF regional offices, which make initial recommendations as to eligibility for § 627 funds. Under authority from the Secretary of Health and Human Services, the Commissioner of the ACYF then makes the final eligibility determinations.

later two decisions to the Departmental Appeals Board (DAB). After several remands and the submission of more information to ACYF, the DAB affirmed ACYF'S decision as to the 1982 funds and remanded the claim for the 1983 funds. ACYF has made no final decision as to the 1983 funds.

In March of 1989, plaintiffs requested information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1988). Defendants responded in full on June 20, 1989, 20 days after plaintiffs filed their complaint with this Court.

## Discussion

In their motion for summary judgment, defendants ask this Court to affirm the decisions of the DAB and dismiss plaintiffs' complaint with prejudice. In support of their motion, defendants make three arguments. First, they argue that PI 82–06 is an interpretive rule, not subject to notice and comment. Second, defendants claim that any allegations plaintiffs make concerning the 1983 funds are not yet ripe for review. Third, defendants contend that plaintiffs are not entitled to, or eligible for, fees incurred in the FOIA request.

In their cross-motion for summary judgment, plaintiffs ask this Court to invalidate PI 82–06, to remand for further proceedings, and to award fees and costs under the FOIA. Plaintiffs offer three arguments in support of their motion: (1) PI 82–06 is a legislative rule, and thus defendants were arbitrary and capricious in not utilizing a notice and comment procedure; (2) the 1983 funds claim is timely because it challenges only defendants' reliance on a legally deficient procedure as arbitrary and capricious—the claim is not a request for review of the actual decision; and (3) plaintiffs are both elibible for and entitled to fees and costs pursuant to the FOIA.

### A. Administrative Procedure Act Claim

Plaintiffs argue that defendants violated § 553 of the Administrative Procedure Act (APA) by not adhering to notice and comment procedures. This failure, plaintiffs claim, renders the application of PI 82–06 to plaintiffs' request for § 627 funds arbitrary and capricious pursuant to § 706(2)(A) of the APA. Defendants, on the other hand, argue that PI 82–06 is an interpretive rule, exempt from notice and comment, and therefore defendants were not arbitrary and capricious in relying on PI 82–06 to determine § 627 eligibility.

The APA requires that an agency promulgating a rule follow notice and comment procedures. 5 U.S.C. § 553 (1988). The APA, however, exempts interpretive rules from those procedures. Section 553(b)(3)(A). Thus, in general, whether or not an agency must follow notice and comment procedures depends on whether the agency is creating new, legislative laws or whether the agency is merely interpreting existing law.

While the distinction between legislative and interpretive rules was once "enshrouded in considerable smog," *American Bus Ass'n v. ICC,* 627 F.2d 525, 529 (D.C. Cir.1980), this Circuit has established that interpretive rules create no new law and have no effect beyond that of the statute.[2] These rules consist of administrative constructions of statutory provisions.[3] They also include statements as to what an administrative officer thinks a statute means.[4]

Subjective rules, in contrast, create law and affect rights.[5] A rule which defines a fairly tight framework to circumscribe an agency's statutorily broad power leaves no discretion in how the rule is to be applied and is therefore subjective.[6]

In *Community Nutrition Institute v. Young,* 818 F.2d 943 (D.C.Cir.1987),

2. *Pesikoff v. Secretary of Labor,* 501 F.2d 757, 763 n. 12 (D.C.Cir.1974).

3. *Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974).

4. *Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952).

5. *Pickus,* 507 F.2d at 1113.

6. *Id.* at 1113.

this Circuit further refined the distinction between legislative and interpretive rules into a two part test. In that case, the Food and Drug Administration (FDA) established action levels pursuant to its statutory mandate to limit poisons in foods "to such extent as he finds necessary for the protection of public health." 21 U.S.C. § 346. The court there determined that the action levels were legislative because they (1) had the binding and present effect of altering rights, and (2) narrowly limited administrative discretion. *Community Nutrition* at 947–48. A third, though less weighty variable the court relied on, was the agency's own language in creating and describing the rules. *Id.* at 947.[7] The distinction, then, between legislative and interpretive rules turns on the degree to which an agency constrains itself to an alteration of the law. *McLouth*, 838 F.2d at 1320 (summarizing the *Community Nutrition* analysis as "the question ... is whether a statement is a rule of present binding effect; the answer depends on whether the statement constrains the agency's discretion.").

This Circuit again relied on the *Community Nutrition* standards in *Alaska v. U.S. Dept. of Transp.*, 868 F.2d 441 (D.C.Cir. 1989). There, the court found the Department of Transportation's (DOT) orders to be legislative rules because the DOT used mandatory language in the orders and the DOT viewed its orders in obligatory terms. *Id.* at 446–47.

In applying *Community Nutrition*, this Court must keep in mind that *Community Nutrition* specifically emphasizes that written guidelines developed by an agency to aid their discretion are not binding rules. *Id.* at 949. Such guidelines become binding rules only when the agency itself gives those rules substantive effect. *Id.* Defendants' program instruction differs from this type of binding rule, and instead presents the type of "written guideline" that the *Community Nutrition* court characterized as interpretive.

**1. PI 82–06 Is Not A Binding Rule.**

In arguing that PI 82–06 is a binding rule, plaintiffs overlook the program instruction's similarity to § 627. Defendants noted on the face of the instruction that PI 82–06 "catalogue[s] verbatim elements in the statute that form the basis for Section [627] compliance." Because PI 82–06 tracks the statute, the instruction cannot create new law of its own. Thus, PI 82–06 does not present some new additional law to which the agency is bound. What is binding on defendants are the statutory mandates of § 627.

The program instruction, however, does differ from § 627 by requiring that "a minimum of 66% or 80% of sampled cases must be found acceptable for the state to attain *conditional compliance* or *substantial compliance.*" (Emphasis in original.) This language departs from the statutory scheme by allowing ACYF to grant § 627 funding without specifically monitoring each and every child. This departure, however, does not affect plaintiffs' rights or alter existing law, for PI 82–06 is simply an application of § 627 to a random selection of cases rather than to every case. If plaintiffs fail to meet the percentage standards established in the program instruction, then they certainly fail to meet the requirements of § 627. The percentage standards do not rise to the legislative level that the DOT's exemptions in *Alaska* did. *Alaska*, 868 F.2d at 447 (exemptions eliminating specific obligations regarding airline advertising were legislative because they "purport[ed] to set forth bright-line tests to shape and channel agency enforcement."). In *Alaska*, the DOT eliminated specific obligations the agency had previously imposed, and thereby altered rights. Here, the language of PI 82–06 indicates that the program instruction is not altering statutory standards. PI 82–06 emphasizes that it "cannot now impose any more specific ... standards or criteria beyond those identified in [§ 627]."

**7.** In *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, the court found that an "agency's own label, while relevant, is not dispositive." *Id.* at 1565. Of more weight is an agency's past characterizations and the nature of past application. *McLouth Steel Products Corp. v. Thomas,* 838 F.2d 1317 (D.C.Cir.1988).

The wording of PI 82–06 also confirms that the instruction is of a nonbinding nature. The program labels itself as only "guidance to ACYF Regional officials," prepared simply to "assure conformity and equity in the interpretation of statutory requirements." Hence, it is not PI 82–06 which binds defendants, but rather the requirements of § 627.

### 2. PI 82–06 Does Not Restrict Administrative Discretion.

The second inquiry under *Community Nutrition* is whether the agency itself has proscribed any discretion in the application of its rules; that is, if the agency promulgates a rule to which it binds itself without any leeway, that rule is subjective because it has the force and effect of the law. The focus of this inquiry is not on whether the enabling statute gave discretion to the agency, but rather on what degree of discretion an agency allows itself in following what it claims to be an interpretive rule. Plaintiffs' emphasis on § 627's grant of discretion, "to the satisfaction on the Secretary," does not resolve the issue of whether PI 82–06 is interpretive or legislative. Defendants view PI 82–06 as merely a recommendation that indicates the program instruction is an interpretive rule. Because the results of a PI 82–06 case sampling form only the basis for a recommendation, defendants have the discretion to adopt or reject the results.

Plaintiffs argue that establishing a minimum compliance scheme curtails agency discretion granted by § 627. This Circuit differentiated legislative rules, which are "based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate," from interpretive rules, which are "based on specific statutory provisions." *United Technologies Corp. v. E.P.A.*, 821 F.2d 714, 720–21 (D.C.Cir.1987). PI 82–06 falls into this latter category because § 627 provides the specific standards by which defendants grant additional funding to a state. In furnishing guidance to the agency on im-

plementing those standards, PI 82–06 at most informs the exercise of discretion, which *Community Nutrition* recognized as interpretive. 818 F.2d at 949. Because PI 82–06 provides only a recommendation for a final decision, and because it does not implement a rigid set of rules based on a generalized statutory mandate, the program instruction is an interpretive rule. Defendants, therefore, were not arbitrary and capricious in not utilizing notice and comment procedures for PI 82–06.

### B. *The 1983 Claim Is Not Yet Ripe for Review*

 Because the DAB remanded plaintiffs' claim of § 627 eligibility for fiscal year 1983, no final administrative decision exists. Lack of final agency action typically renders a claim unripe for review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The ripeness doctrine protects an agency from judicial interference until "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* The *Abbott Laboratories* framework for analyzing the ripeness of pre-enforcement agency action requires evaluation of the fitness of the issues and degree of hardship from withholding review. *Id.* at 149. If an issue raises a purely legal question, threshold suitability for judicial determination is assumed. *Eagle–Picher Indus. v. E.P.A.*, 759 F.2d 905, 915 (D.C.Cir.1985).

 The issue before the Court is not the outcome of defendants' determination of ineligibility for 1982 and pending determination for 1983; plaintiffs do not challenge the merits of those findings. Plaintiffs instead raised a purely legal question as to whether defendants must have adhered to notice and comment procedures before they properly could use PI 82–06. Under the *Abbott Laboratories* and *Eagle–Picher* analysis, the issue of whether PI 82–06 is a legislative or interpretive rule is ripe for review.[8] The issue,

---

**8.** This Circuit applies "at least a limited presumption of pre-enforcement judicial review in

the case of authoritative interpretive rulings." *National Automatic Laundry and Cleaning*

then, of whether defendants were arbitrary and capricious in relying on PI 82–06 without notice and comment is ripe.[9] The Court already has determined above that because PI 82–06 is an interpretative rule, defendants may rely on it without being arbitrary and capricious. Accordingly, the purely legal question plaintiffs raise as to the 1983 claim is ripe. Therefore, plaintiffs' claim as to 1983 is also dismissed.

## C. *Plaintiffs Are Eligible But Are Not Entitled to Fees Under FOIA.*

■■■■■■ Because defendants did not respond to plaintiffs' FOIA request until after initiation of judicial action, plaintiffs request attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E) (1988). This provision provides that a court may assess "reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* Assessment of fees involves a two-step inquiry. First, a complainant must show eligibility for an award because it has substantially prevailed. Second, a complainant must show entitlement to the award. *Pyramid Lake Paiute Tribe v. United States Dept. of Justice,* 750 F.2d 117, 119 (D.C.Cir.1984). While plaintiffs are eligible for attorneys' fees and costs under § 552(a)(4)(E), they are not entitled to such an award.

### 1. Eligibility

■■■■■ An agency cannot foreclose an award of attorneys' fees and costs simply by complying with a FOIA request during the pendency of litigation. *Cuneo v. Runsfeld,* 553 F.2d 1360, 1365 (D.C.Cir.1977). A complainant, however, must show more

than the mere initiation of an action. It must demonstrate that "prosecution of the action could reasonably be regarded as necessary to obtain the information ... and that a causal means exists between that action and the agency's surrender of the information." *Cox v. United States Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979).

Plaintiffs argue that HHS's lack of response to the FOIA request necessitated this action and that defendants' response shortly thereafter demonstrates causation. Defendants argue that because the request was handled in the normal course of business and because the agency intended to respond to the request regardless of litigation, causality does not exist.

■■■■■ Beyond the mere filing of the complaint and the subsequent release of the information, courts must consider such factors as whether the agency had reasonable and actual notice of the request, whether the agency made a good faith effort, the scope of the request, and the degree of other burdens facing the agency. *Cox,* 601 F.2d at 6; *Alliance for Responsible CFC Policy, Inc. v. Costle,* 631 F.Supp. 1469 (D.D.C.1986). If such factors constitute the actual cause of HHS's delay in responding, then plaintiffs have not substantially prevailed. Defendants, however, offer no such considerations. Mere intentions to respond after three months of silence do not evidence due diligence. Arguing that the FOIA request was handled in the normal course of business suggests defendants are in the habit of delaying response to all FOIA requests. Defendants failed to provide even preliminary notification pursuant to 5 U.S.C. § 552(a)(6)(A)(i) (1988).[10] While the Court

---

Council v. Schultz, 443 F.2d 689, 703 (D.C.Cir. 1971). The interpretive ruling must be "sufficiently final so that the agency's position is definitive and the regulated parties are expected to conform to the rule." *Ciba–Geigy Corp. v. E.P.A.,* 801 F.2d 430, 435–38 (D.C.Cir.1986). Defendants have clearly finalized PI 82–06.

**9.** The issue of how defendants will or will not apply PI 82–06 to plaintiffs' claim for 1983 funds is a factual matter not fit for review under the first prong of *Abbott Laboratories.*

**10.** 5 U.S.C. § 552(a)(6)(A)(i) states that each agency shall "determine within ten days ... after receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons thereof...." Failure to comply with this time limit deems the requestor to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C) (1988). Thus, defendants are incorrect in claiming plaintiffs are not eligible to an award because plaintiffs did not appeal the lack of a response. *See also*

recognizes the burdens placed on agencies by the FOIA, this does not appear to be a case in which the agency, "upon actual and reasonable notice, made a good faith effort to search out material and to pass on whether it should be disclosed." *Cox*, 601 F.2d at 6. Given this circumstance, it may be concluded that plaintiffs' suit caused the release of the documents obtained.

### 2. Entitlement

■■■ A finding of eligibility to an award under § 552(a)(4)(E), however, does not automatically entitle a complainant for such an award. *Church of Scientology of Calif. v. Harris*, 653 F.2d 584, 590 (D.C.Cir. 1981). Entitlement is at the discretion of the district court. *Cox*, 601 F.2d at 7. This Circuit has identified several factors to guide that discretion: "(1) Benefit to the public, if any, from the suit; (2) commercial benefit to the complainant; (3) nature of the complainant's interest in the released information; and (4) whether the agency's withholding of the information had a reasonable basis in law." *Cuneo*, 553 F.2d at 1364.

Plaintiffs satisfy the first relevant condition. The information sought—how often defendants rely on PI 82–06 and what other guidelines defendants use in determining § 627 eligibility—is of the type that " 'is likely to add to the fund of information that citizens may use in making vital political choices.' " *Fenster v. Brown*, 617 F.2d 740, 744 (D.C.Cir.1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978)). Other states concerned with § 627 compliance may benefit from the information plaintiffs sought.

The second and third factors, however, do not suggest entitlement.[11] While plaintiffs are public-interest oriented, their motive in the FOIA request was personal: they sought information about the program instruction in order to aid their litigation against defendants. The FOIA request itself evidences such a motive, for plaintiffs

asked for documents showing "the HHS decision ... that a state is eligible for § [627] funds after a finding that a state has failed the compliance review process," and "guidelines ... which guide the agency's exercise of discretion in determining a state's eligibility for § [627] funds." These requests suggest preparation for suit concerning the issue of PI 82–06's legislative or interpretive status. They concern precisely the subject matter of this litigation and are beyond simply an inquiry as to how the agency makes § 627 determinations. This district has found that the use of FOIA as a substitute for civil discovery is not proper and should not be encouraged by a fees and costs award. *Simon v. United States*, 587 F.Supp. 1029, 1033 (D.D.C. 1984); *Republic of New Afrika v. Federal Bureau of Investigation*, 645 F.Supp. 117, 121 (D.D.C.1986). Plaintiffs' personal interest of litigation preparation for its own benefit does not suggest entitlement to a FOIA award.

The fourth criterion provides no relevancy as there is no claim of any "withholding" of documents. Defendants ultimately complied in full with plaintiffs' FOIA request.

■■■ In applying its discretion to make an entitlement determination, this Court may not give any one particular factor dispositive weight, *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 714 (D.C.Cir.1977), and should use the factors to further the FOIA's basic policy of encouraging maximum feasible public access to government information. *Id.* at 715. The factors here indicate plaintiffs are not entitled to an award under § 552(a)(4)(E). While other states may benefit from the information sought, plaintiffs' personal interests in the FOIA information does not further the FOIA policy.

### Conclusion

The Court finds that Program Instruction 82–06 is an interpretive rule and, there-

*Information Acquisition Corp. v. Dept. of Justice,* 444 F.Supp. 458 (D.D.C.1978).

11. We consider these two factors together as they are closely related and are often evaluated together. *See Fenster,* 617 F.2d at 743; *Costle,* 631 F.Supp. at 1471.

fore, defendants were not arbitrary and capricious in using the rule to determine plaintiffs' eligibility for § 627 funds for either 1982 or 1983. The Court finds plaintiffs eligible for, but not entitled to, an award of attorneys' fees and costs under § 552(a)(4)(E). Accordingly, the Court grants defendants' motion and dismisses plaintiffs' complaint.